IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPIRE GLOBAL, INC., | ) |
| Plaintiff, | ) C.A. No. 25-cv-168-___ |
| v. | ) |
| KPLER HOLDING SA, | ) |
| Defendant. | ) |

## MOTION FOR EXPEDITED PROCEEDINGS

Plaintiff Spire Global, Inc. ("Spire" or the "Company"), by and through its undersigned counsel, respectfully requests an order expediting these proceedings and scheduling a one-day trial to commence the week of March 24, 2025 (the "Motion"). The request for expedited proceedings set forth in this Motion mirrors Spire's request for expedited proceedings that was first filed on February 10 and pending as of the time Defendant Kpler Holding SA ("Kpler") removed this action from the Delaware Court of Chancery to this Court (the "Original Motion"), which Spire notified this Court of pursuant to Local Rule 81.2 on February 12, 2025. *See* ECF No. 10. Kpler has suggested to this Court that it is unable to respond to the Original Motion because it was not filed in federal court. *See* ECF No. 23. Spire does not concede that Kpler has no obligation to respond to the Original Motion under the rules of this Court and files this Motion solely to resolve Kpler's purported procedural obstacle to resolving this case promptly and avoid further harm to Spire from Kpler's continued delay.

The grounds for this Motion are set forth below.

## BACKGROUND

1. As set forth in more detail in Spire's Verified Complaint for Specific Performance (ECF No. 4), this is an action seeking specific performance of a share purchase agreement between

Spire and Kpler and declaratory judgment declaring that Kpler has breached the agreement and is not excused from performing its obligations thereunder. Spire seeks an order of expedition in these proceedings. Such an order is essential to allow Spire to secure the benefit of its bargain and to protect Spire from the continuing uncertainty and harm resulting from Kpler's attempt to shirk its obligations under the share purchase agreement.

2. On November 13, 2024, Spire and Kpler entered into a Share Purchase Agreement (the "SPA") for the sale of Spire's maritime business (as defined in the SPA, the "Business") to Kpler following a highly competitive sales process. That same day, Spire announced the transaction with Kpler and that it anticipated a closing in the first quarter of 2025. ¶ 24.[1]

3. Under the SPA, which is governed by Delaware law, Kpler is required to use "best efforts" and to cooperate with Spire "to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, appropriate, or desirable to make or cause to be made the appropriate filings and submissions required to" meet all regulatory requirements for the transaction. ¶¶ 18, 27. Kpler also has a "hell-or-high-water" obligation to eliminate any regulatory impediments to the transaction. ¶¶ 28-30. Spire may also seek specific performance, an injunction, or other equitable relief to force Kpler to perform its obligations under the SPA. ¶¶ 38-39.

4. The SPA also gives Spire the right to designate the date of the closing, which would occur no later than five business days after the satisfaction or waiver of all the conditions precedent set forth in the SPA (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing). ¶ 36.

---

[1] Citations to "¶ __" refer to the paragraphs of Spire's Verified Complaint for Specific Performance (ECF No. 4).

5.  As a result of the parties' mutual efforts following signing, all of the conditions precedent set forth in the SPA (other than those conditions that by their nature were to be satisfied at closing) were satisfied as of January 17, 2025. ¶ 42.

6.  Representatives of Spire and Kpler met on January 17, 2025 to confirm that the requisite closing conditions had been satisfied and to designate Friday, January 24, 2025 as the Closing Date. ¶ 43. Kpler also confirmed it would take the necessary steps to fund the purchase price on that date. *Id.*

7.  Spire was ready, willing and able to go forward with the closing on January 24, 2025. Kpler, however, reversed course and declined to close on January 24, 2025, in express breach of the SPA. ¶ 45.

8.  Kpler has offered two after-the-fact justifications for its breach of the SPA and refusal to close (*see* ¶ 46), neither of which precludes the parties from proceeding with the closing or permits Kpler to ignore its contractual obligations.

9.  Spire remains ready, willing and able to consummate the transaction, but Kpler continues to refuse to proceed with closing despite not having identified any unmet condition or contractual right that would warrant avoiding closing. ¶ 3. And while Kpler has suggested to this Court that there exists a "regulatory impediment to closing," it has failed to identify any unmet closing condition under the SPA. *See* ECF No. 23 (2/18/25 Letter from R. Koch) at 3.

10. On February 10, 2025, Spire commenced this action in the Delaware Court of Chancery to enforce its rights against Kpler by filing a Verified Complaint for Specific Performance (the "Complaint") and motion to expedite. *See* ECF Nos. 4, 11. Rather than respond

to Spire's pending motion, Kpler removed the action to this Court on February 11, 2025. *See* ECF No. 2.[2]

11. The Court should grant this Motion and schedule an expedited trial to prevent irreparable harm to Spire and resolve the discrete issues of whether all conditions to closing have been met and whether Kpler has breached the SPA by failing to close. The parties expressly agreed that "irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur" if Kpler did not perform its obligations under the SPA. ¶ 11. Kpler also agreed that Spire is "entitled to an injunction or injunctions, specific performance, or other equitable relief" to prevent any breaches of the SPA. *Id.*

12. As set forth in the Complaint, Spire seeks this Court's assistance in remedying Kpler's breach and enforcing its contractual rights. This type of case is routinely expedited in the Chancery Court in recognition that it is in no one's interest to delay resolution of a dispute over whether a transaction should close. While such proceedings are less common in this Court, it is not because they are without basis but instead because such cases typically proceed in the Chancery Court, where Spire filed this action before it was removed by Kpler.

13. Kpler's delay has already harmed Spire, causing confusion among Spire's employees and disruption with its customers. ¶ 62. Spire's existing debt, which Spire intends to retire using the proceeds from the transaction, is causing significant financial pressures on the Business and preventing Spire from investing in important, near-term growth opportunities. ¶ 24. Furthermore, the resulting uncertainty around whether or when the transaction will close has

---

[2] Spire asked counsel for Kpler to accept service immediately after filing the Verified Complaint and Motion to Expedite on February 10 and repeatedly contacted counsel for Kpler over the following days without receiving any response; it did not wait until February 14 as Kpler's letter incorrectly states. *See* ECF No. 23 at 2.

resulted in external pressure to the Company's share price. After market hours on February 11, 2025, Spire filed an 8-K that disclosed, among other things, that Spire had commenced litigation against Kpler in the Delaware Court of Chancery as a result of Kpler's failure to consummate the closing. Spire's stock price fell by over 50% the following day. *See* Ex. A (SPIR Stock Chart, 2/7/2015 through 2/12/2025).

14. The SPA sets an "End Date" of November 13, 2025. ¶ 28. Accordingly, this action must be adjudicated expeditiously to avoid prejudice to Spire, reduce risks to its business, and mitigate any harm resulting from Kpler's inexcusable delay to closing.

## ARGUMENT

15. In order for the Court to provide meaningful relief for Spire's claims, the proceedings and trial must be expedited.

16. This Court has broad discretion to schedule and manage its own docket. *See, e.g.*, Fed. R. Civ. P. 16; D. Del. L.R. 7.1.2(b) (setting standard briefing schedule "[u]nless otherwise ordered"); *see also Cordis Corp. v. Bos. Sci. Corp.*, 2009 WL 3160270, at *3 (D. Del. Sept. 30, 2009) (district courts are "afforded broad discretion to control and manage their dockets including the authority to decide the order in which they hear and decide issues pending before them") (internal quotation and citation omitted). To be entitled to expedited proceedings, Spire need only show "a sufficiently colorable claim" and "a sufficient possibility of a threatened irreparable injury." *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 6673687, at *2 (D. Del. Oct. 30, 2015) (internal quotation and citation omitted), *report and recommendation adopted*, 2015 WL 9437530 (D. Del. Dec. 22, 2015); *see also TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*, 2018 WL 2932728, at *5 n.13 (D. Del. June 12, 2018) ("Where a party seeking expedition shows 'good cause' such that its request is 'reasonable in light of the relevant circumstances,' this Court will

5

expedite proceedings.") (citing *Kone Corp. v. Thyssenkrupp USA Inc.*, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011)). Moreover, it is the "traditional practice" in Delaware courts to expedite trial where, as here, a target seeks specific performance of a merger agreement. *In re IBP, Inc. S'holders Litig.*, 2001 WL 406292, at *6 (Del. Ch. Apr. 18, 2001). That practice reflects Delaware courts' recognition that "damages are often an unsatisfactory substitute to the bargained-for rights to specific performance." *Gilat Satellite Networks Ltd. v. Comtech Telecomms. Corp.*, C.A. No. 2020-0605-JRS, at 47 (Del. Ch. July 27, 2020) (TRANSCRIPT); *see also Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 9437530, at *5 (D. Del. Dec. 22, 2015) (applying Delaware state law standard for motion to expedite and noting that "the state and federal standards are not in conflict").

### I. Spire's Claims Meet the Colorability Standard

17. Spire's claims here are more than colorable. The colorability standard is "even lower tha[n] the 'conceivability' standard applied on a motion to dismiss" and requires a party merely to identify a "non-frivolous set of issues." *Sinchareonkul v. Fahnemann*, 2015 WL 292314, at *1 n.1 (Del. Ch. Jan. 22, 2015).

18. Here, Spire's Complaint sets forth detailed allegations of Kpler's breach of the SPA in connection with its refusal to consummate the closing. Under the SPA's plain terms, Kpler's breach is remediable by an order of specific performance. ¶¶ 38-39.

19. To the extent Kpler contends Spire has breached the SPA, that contention changes nothing. To the contrary, Delaware courts have repeatedly granted expedition of a target's claim for breach of a merger agreement when the counterparty has accused the target of breach. *See, e.g., AB Stable VIII LLC v. MAPS Hotels and Resorts One LLC*, C.A. No. 2020-0310-JTL, at 38 (Del. Ch. May 8, 2020) (TRANSCRIPT); *Akorn, Inc. v. Fresenius Kabi AG*, C.A. No. 2018-0300-

JTL, at 45 (Del. Ch. May 2, 2018) (TRANSCRIPT). Should Kpler assert allegations of breach as a defense to Spire's breach claim, Spire will show those allegations to be meritless in the expedited litigation of its claims.

## II. Spire Will Suffer Irreparable Harm Absent Expedition

20. Kpler expressly agreed that its breach of the SPA would irreparably harm Spire and that Spire would be entitled to specific performance in the event of such breach. ¶ 38. Such provisions are enforceable under Delaware law and "alone suffice to establish . . . irreparable harm." *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1226 (Del. 2012).

21. Delaware Courts routinely rely on such specific performance provisions to expedite claims like those brought by Spire. Indeed, when parties to an agreement have included "a stipulation as to irreparable harm and as to the availability of specific performance," there is a "relatively easy case for expedition." *Akorn*, C.A. No 2018-0300-JTL, at 45 (TRANSCRIPT) (ordering trial 74 days after filing of expedition motion).

22. Even absent the parties' agreement, expedited proceedings would be warranted to prevent irreparable harm. Specific performance is "the only method by which to adequately redress the harm threatened to [the company] and its stockholders" from breach of a merger agreement. *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 23 (Del. Ch. 2001); *see also Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 763 (Del. Ch. 2008) (granting specific performance of a transaction after an expedited trial). That is, specific performance is the "preferred remedy" in cases like this. *Tiffany & Co. v. LVMH Moët Hennessy-Louis Vuitton SE*, C.A. No. 2020-0768-JRS, at 50-51 (Del. Ch. Sept. 21, 2020) (TRANSCRIPT) ("[W]hen the [plaintiff] carries its burden, that means specific performance as quickly as feasibly can be ordered."); *cf. Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 6673687, at *3 (D.

Del. Oct. 30, 2015) (granting motion to expedite and finding that plaintiff had stated a "colorable claim" that "its assets will depreciate during . . . deadlock" between joint venture partners).

23.     Moreover, Delaware courts have acknowledged that whenever a merger is held in "limbo" by a buyer's refusal to close, the seller is at risk of irreparable injury. *See Akorn*, C.A. No. 2018-0300-JTL, at 47 (TRANSCRIPT) (noting that it is not "good for anyone . . . to be tied up in limbo under an agreement, while at the same time dealing with external pressures, be they stock market driven, customer market driven, supplier market driven, employment market driven, whatever the source"). Delaware courts have accordingly "been solicitous in accommodating parties with expedited proceedings to address a cloud over a merger transaction." *Channel Medsystems, Inc. v. Boston Sci. Corp.*, C.A. No. 2018-0673-AGB, at 52 (Del. Ch. Oct. 9, 2018) (TRANSCRIPT).

24.     As a result of Kpler's breach and the resulting delay to closing, Spire has already experienced significant harm and will suffer irreparable harm absent expedition.

25.     First, Kpler's actions to avoid consummating the deal create uncertainty and delay that harm Spire and expose the Company to adverse effects on its business operations. ¶ 12. Kpler's failure to close has already caused significant confusion and disruption among Spire employees, who are more likely to be poached by Spire's competitors as a result of Kpler's delay. ¶ 62. Kpler's delay and the resulting uncertainty have also damaged the Business's relationship with its customers and suppliers. *Id.* Continued uncertainty about the transaction with Kpler will also impair Spire's operations as it is forced to address investor concerns regarding the status of the transaction and the possibility that the transaction may not close.

26.     Second, as a result of a restatement process initiated in August 2024, Spire has triggered a default with its lender and, as such, has been forced to negotiate waivers and

amendments to its financing agreement. ¶ 63. Spire is also continuing to incur expense related to the restatement process, which it needs to pay off using the proceeds from the sale of the Business. *Id.*

27.     Third, since the restatement process has prevented Spire from accessing the capital markets to finance its operations, selling the Business is one of its few remaining financing strategies and key to finalizing the restatement process and transforming Spire's cost structure and operating model. ¶ 64. Kpler's failure to consummate closing and its continued delay threaten to derail the restatement process and significantly impair Spire's enterprise value and ability to finance its operations. *Id.*

28.     Fourth, a key strategic rationale of the transaction with Kpler was to retire Spire's outstanding debt. ¶ 63. As Spire has publicly stated, it intends to use the proceeds of the sale to retire all outstanding debt and invest in near-term growth opportunities, which will "mitigate[] risk by removing the most significant external financial pressures." ¶ 24. On February 11, 2025, Spire disclosed that although it continues to discuss with its lenders the status of the SPA closing, there is no assurance that those lenders will agree to any further forbearance, waivers, and/or amendments to the financing agreement on terms acceptable to the Company or at all. Ex. B (February 11, 2025 8-K). Spire also represented that, as a result of the expected delay to closing, it intends to seek additional financing and may alter certain commercial efforts or pursue other strategies. *Id.* The Company also stated that due to its projected cash needs, including amounts owed pursuant to its financing agreement and the uncertainty around closing, there is "substantial doubt" about the Company's ability to continue as a going concern for a period of at least twelve months. *Id.* Spire remains subject to these risks for as long as Kpler continues to delay closing. ¶ 63.

29.     Fifth, Kpler's continued failure to close has subjected Spire to external stock market pressure. When Spire announced the sale of the Business to Kpler, Spire disclosed that it anticipated a closing in Q1 2025. ¶ 65. After the Company issued the February 11 8-K, raising, among other things, the risk that closing may not be achieved according to that timeline or at all, Spire's stock price fell from $19.85 at closing on February 11, 2024 to $9.91 at opening on February 12, 2025—an over 50% drop.

30.     Finally, Kpler's suggestion that the November 2025 End Date under the SPA gives the parties sufficient time to litigate this matter over several months is a mischaracterization. *See* ECF No. 23 at 2-3. The End Date was never intended to serve as a guidepost for a closing timeline, and Kpler's suggestion that its obligation to close remains optional as long as it closes the transaction at some point before the End Date is false. Kpler was obligated to close on the closing date of January 24, 2025. Just like Kpler had no basis for its failure to close on that date, it has no basis for requesting that this action should be litigated on an extended schedule over the next nine months up to the date when it may attempt to terminate the SPA and walk away from the transaction.

31.     An expedited schedule is necessary to avoid further deterioration of the Business and the resulting irreparable harm to Spire.

**III.     Spire's Proposed Schedule Is Reasonable and No More Burdensome Than Necessary**

32.     Consistent with its public disclosures, Spire is seeking a March trial date to facilitate closing before the end of the first quarter of 2025. Given the limited facts at issue here, a trial during the week of March 24, 2025 provides the parties with sufficient time to complete pre-trial practice.

33. In seeking a trial approximately forty-two days from the filing of its complaint, Spire's request is consistent with prior expedition requests granted by Delaware courts. *See, e.g., Rohm & Haas Co. v. Dow Chem. Co.*, 2009 WL 445612, at *1 (Del. Ch. Feb. 6, 2009) (setting trial forty-two days following motion to expedite); *In re IBP, Inc. v. Richard L. Bond*, C.A. No. 18373-VCS, at Dkt. 124 (Del. Ch. Apr. 16, 2001) (setting trial forty-five days following motion to expedite).

34. Finally, this case is a simple one: the closing conditions set forth in the SPA were met, and Kpler failed to close. Spire's requested relief seeks to hold Kpler to the terms of the bargain it struck under the SPA. While Kpler has suggested a need for "[s]ignificant discovery" (ECF No. 23 at 2), that assertion does not serve to complicate this straightforward breach of contract case. The limited factual issues here demonstrate that the parties can proceed to trial promptly. *See AB Stable VIII LLC*, C.A. No. 2020-0310-JTL, at 42-43 (Del. Ch. May 8, 2020) (TRANSCRIPT) (granting motion to expedite where dispute was not "seriously fact-heavy" and "more of a case about the law and the contract").

## **CONCLUSION**

35. For the foregoing reasons, Spire respectfully requests that the Court grant Spire's proposed order requesting expedited proceedings, requiring the parties to meet and confer on a pre-trial schedule, and scheduling a trial on the merits in the fourth week of March 2025. With respect to this Motion, Spire respectfully requests that Kpler file any opposition on or before February 20, 2025 and that, subject to the Court's calendar, a hearing be scheduled for February 21, 2025.

|  |  |
|---|---|
| OF COUNSEL: | FAEGRE DRINKER<br>BIDDLE & REATH LLP |
| Jonathan K. Youngwood<br>Meredith Karp<br>Jacob Lundqvist<br>Nora C. Hood<br>SIMPSON THACHER &<br>BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>(212) 455-2000 | /s/ *Oderah C. Nwaeze*<br>Oderah C. Nwaeze (#5697)<br>Angela Lam (#6431)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>(302) 467-4200<br>oderah.nwaeze@faegredrinker.com<br>angela.lam@faegredrinker.com<br><br>*Attorneys for Plaintiff* |

Dated:  February 18, 2025