IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPIRE GLOBAL, INC.,<br><br>                        Plaintiff,<br><br>v.<br><br>KPLER HOLDING SA,<br><br>                        Defendant. | C.A. No. 25-cv-00168<br><br>**Original Version Filed: Feb. 12, 2025**<br>**Redacted Version Filed: Feb. 19, 2025** |

**EXHIBIT A TO**
**NOTICE OF PENDING MATTERS REQUIRING JUDICIAL ATTENTION**
**FILED PURSUANT TO LOCAL RULE 81.2**

OF COUNSEL:

**SIMPSON THACHER & BARTLETT LLP**

Jonathan K. Youngwood (*pro hac vice* forthcoming)
Meredith Karp (*pro hac vice* forthcoming)
Jacob Lundqvist (*pro hac vice* forthcoming)
Nora C. Hood (*pro hac vice* forthcoming)
425 Lexington Avenue
New York, NY 10017

Dated: February 12, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com

*Attorneys for Plaintiff*

# Exhibit A

EFiled: Feb 13 2025 04:59PM EST
Transaction ID 75632828
Case No. 2025-0143-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| SPIRE GLOBAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> KPLER HOLDING SA, <br><br> Defendant. | ) <br> ) <br> ) C.A. No. 2025-____-___ <br> ) <br> ) <br> ) **REDACTED PUBLIC VERSION** <br> ) <br> ) <br> ) <br> ) <br> ) |

## MOTION FOR EXPEDITED PROCEEDINGS

Plaintiff Spire Global, Inc. ("Spire"), by and through its undersigned counsel, respectfully requests an order expediting these proceedings and scheduling a one-day trial to commence the week of March 24, 2025 (the "Motion"). The grounds for this Motion are set forth below.

## INTRODUCTION

1. This is an action seeking specific performance of a share purchase agreement between Spire and Kpler Holding SA ("Kpler") and declaratory judgment declaring that Kpler has breached the agreement and is not excused from performing its obligations thereunder. Spire seeks an order of expedition consistent with this Court's customary practice. Expedition here is essential to allow Spire to secure the benefit of its bargain and to protect Spire from the continuing uncertainty and market risk resulting from Kpler's attempt to shirk its obligations under the share purchase agreement.

2. On November 13, 2024, Spire and Kpler entered into a Share Purchase Agreement (the "SPA") for the sale of Spire's maritime business (as defined in the SPA, the "Business") to Kpler following a highly competitive sales process.

3. As finally negotiated, the SPA gives Kpler a right to avoid closing only in limited circumstances, none of which have occurred here. The SPA also includes a "hell-or-high-water" provision obligating Kpler to take any and all actions necessary to eliminate each and every regulatory impediment to closing.

4. Following execution of the SPA, Spire worked diligently to satisfy the conditions to closing, all of which had been satisfied or could be satisfied as of January 17, 2025.

5. Kpler breached the SPA by failing to consummate the closing on January 24, 2025. In discussions and correspondence around the intended closing date, Kpler has raised two after-the-fact justifications for why it contends closing cannot proceed: first, Kpler's desire to have a final, renegotiated agreement with a third-party data supplier to the Business (the "Supplier") in place and, relatedly, ███████████████████████████████████████████████████ ███████████████████████████████ and second, ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

2

██████████████████████████████████████████████ Neither purported justification has any basis in the SPA or presents a real hurdle to closing.

6.  The Court should grant this Motion and schedule an expedited trial to prevent irreparable harm to Spire and resolve the discrete issues of whether all conditions to closing have been met and whether Kpler has breached the SPA by failing to close.  The parties expressly agreed that "irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur" if Kpler did not perform its obligations under the SPA.  *See* SPA § 12.13.  Kpler also agreed that Spire is "entitled to an injunction or injunctions, specific performance, or other equitable relief" to prevent any breaches of the SPA.  *Id.*  As set forth in the concurrently filed complaint, Spire seeks this Court's assistance in remedying Kpler's breach and enforcing its contractual rights.  This Court has historically exercised its equitable powers to hold sophisticated parties to the terms of contracts freely entered.  Indeed, this type of case is routinely expedited in recognition that it is in no one's interest to delay resolution of a dispute over whether a transaction should close.

7.  Spire announced to the market in November 2024 that it anticipated closing the transaction in the first quarter of 2025.  ¶ 24.[1]  Kpler's delay has already

---

[1] Citations to "¶ __" refer to the paragraphs of Spire's Verified Complaint for Specific Performance, filed on February 10, 2025.

caused confusion among Spire's employees and disruption with its customers. ¶ 62. In addition, Spire's existing debt, which Spire intends to retire using the proceeds from the transaction, is causing significant financial pressures on the Business and preventing Spire from investing in important, near-term growth opportunities. ¶ 24. The SPA also sets an "End Date" of November 13, 2025, after which, if the transaction has not closed, either party generally may terminate the SPA. *See* SPA § 10.1(b); *id.* at Ex. A. Accordingly, this action must be adjudicated expeditiously to avoid prejudice to Spire, reduce risks to its business, and mitigate any harm resulting from the delay to closing.

## BACKGROUND

8. On August 14, 2024, Spire disclosed to the SEC that, following a review of its accounting practices and procedures regarding revenue recognition as to certain contracts, Spire had determined that certain of its previously-issued financial statements needed to be restated. ¶ 19.

9. On August 20, 2024, Spire received an unsolicited letter of intent from Kpler, proposing the acquisition by Kpler of the Business. ¶ 20. In response to the letter, Spire directed its investment banker to commence an auction process. The auction process was competitive, with multiple bidders submitting proposals on attractive terms. *Id.*

10. Another bidder emerged with a superior offer, which Kpler was initially unwilling to match. Spire's investment banker notified Kpler on October 21, 2024 that Spire would be abandoning discussions with Kpler and moving forward with another bidder. ¶ 21.

11. The next day, on October 22, 2024, Kpler submitted a confidential offer ███████████████████████████████████████████████████████

███████████████████████████████████████ ¶ 22.

12. Ultimately, based on Kpler's commitment to provide certainty of closing despite regulatory risks, willingness to manage any risks associated with Supplier without any closing condition, and commitment to do everything necessary to timely close the transaction despite any regulatory impediments, Spire elected to enter into a transaction with Kpler. ¶ 23.

13. On November 13, 2024, Spire announced that it had entered into an agreement for the sale of the Business to Kpler and anticipated a closing in the first quarter of 2025. ¶ 24. The key terms of the SPA relevant to this action are summarized below:

14. **<u>Efforts Covenants</u>**. Kpler is required to use "best efforts" and to cooperate with Spire "to take all actions or cause all things to be done that are necessary to make all appropriate filings and submissions required to" meet all regulatory requirements for the transaction. ¶ 27. Kpler also has a "hell-or-high-

water" obligation to eliminate any regulatory impediments to the transaction. ¶¶ 28-30.

15. **Closing Conditions**. The SPA includes limited, customary conditions to closing, including the accuracy of Spire's representations and warranties regarding the divested Business as of the closing, except to the extent the representations are made as of an earlier date. ¶ 32. The SPA also specifically requires as a condition to closing that "there shall not have occurred any Material Adverse Effect" ("MAE") since the SPA has been executed. ¶ 33.

16. **Carefully Negotiated MAE Definition**. The SPA's definition of an MAE is narrowly defined as: "any effect that is materially adverse to the assets, Liabilities, financial condition or existing business, of the Business (taken as a whole)." ¶ 33. It does not extend to events that in the future could or would be reasonably expected to result in an MAE. The definition also lists several events that do not constitute an MAE. *Id.*

17. **Customary Representations**. Spire made representations regarding the Business's existing contracts, including that the Business is not in material breach of any material contract as of the date of closing and that the Business had not received any unresolved written notice of default as of the date of signing. ¶ 35.

18. **Interim Operating Covenants.** Between signing and closing, Spire may not, without Kpler's consent, enter into any settlement or compromise

agreement involving monetary damages in excess of $15,000 or imposing equitable relief on the Business. ¶ 31. Kpler's consent to any agreement exceeding these restrictions shall not be "unreasonably withheld, conditioned or delayed." *Id.*

19.  **Closing Date**. The SPA gives Spire the right to designate the date of the closing ("Closing Date"). ¶ 36.

20.  **Specific Performance**. Spire may seek specific performance, an injunction, or other equitable relief to force Kpler to perform its obligations. ¶¶ 38-40.

21.  As a result of the parties' mutual efforts, all of the conditions precedent set forth in the SPA (other than those conditions that by their nature were to be satisfied at closing) were satisfied as of January 17, 2025. ¶ 42.

22.  Representatives of Spire and Kpler met on January 17, 2025 to confirm that the requisite closing conditions had been satisfied and to designate Friday, January 24, 2025 as the Closing Date. ¶ 43. Kpler also confirmed it would take the necessary steps to fund the purchase price on that date. *Id.*

23.  Spire was ready, willing and able to go forward with the closing on January 24, 2025. Kpler, however, reversed course and declined to close on January 24, 2025 in express breach of the SPA. ¶ 45.

24.  Kpler has offered two purported justifications for its breach of the SPA and refusal to close: (i) Kpler's ongoing but unresolved renegotiation of the Supplier

Agreement and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (ii) regulatory developments ▮▮▮

¶ 46. Neither after-the-fact excuse precludes the parties from proceeding with the closing, nor do they permit Kpler to ignore its contractual obligations.

25. Spire remains ready, willing and able to consummate the transaction, but Kpler continues to refuse to proceed with closing without having identified any unmet condition or contractual right to avoid closing. ¶ 3.

26. On February 10, 2025, Spire brought this action to enforce its rights against Kpler.

## ARGUMENT

27. It is the "traditional practice in this court" to expedite trial where, as here, a target seeks specific performance of a merger agreement. *In re IBP, Inc. S'holders Litig.*, 2001 WL 406292, at *6 (Del. Ch. Apr. 18, 2001). That practice reflects this Court's recognition that "damages are often an unsatisfactory substitute to the bargained-for rights to specific performance." *Gilat Satellite Networks Ltd. v. Comtech Telecomms. Corp.*, C.A. No. 2020-0605-JRS, at 47 (Del. Ch. July 27, 2020) (TRANSCRIPT).

28. To be entitled to expedited proceedings, Spire need only show "a sufficiently colorable claim" and "a sufficient possibility of a threatened irreparable

injury." *Alpha Nat. Res., Inc. v. Cliffs Nat. Res., Inc.*, 2008 WL 4951060, at *2 (Del. Ch. Nov. 6, 2008). Both elements are met here.

## I. Spire's Claims Meet The Colorability Standard

29. Spire's claim here is more than colorable. The colorability standard is "even lower tha[n] the 'conceivability' standard applied on a motion to dismiss" and requires a party merely to identify a "non-frivolous set of issues." *Sinchareonkul v. Fahnemann*, 2015 WL 292314, at *1 n.1 (Del. Ch. Jan. 22, 2015).

30. Here, Spire's complaint sets forth detailed allegations of Kpler's ongoing breach of the SPA in connection with its refusal to consummate the closing. Under the SPA's plain terms, Kpler's breaches are remediable by an order of specific performance. *See* SPA § 12.13.

31. Kpler's suggestion of a potential breach changes nothing. To the contrary, this Court has repeatedly granted expedition of a target's claim for breach of a merger agreement when the counterparty has accused the target of breach. *See, e.g.*, *AB Stable VIII LLC v. MAPS Hotels and Resorts One LLC*, C.A. No. 2020-0310-JTL, at 38 (Del. Ch. May 8, 2020) (TRANSCRIPT); *Akorn, Inc. v. Fresenius Kabi AG*, C.A. No. 2018-0300-JTL, at 45 (Del. Ch. May 2, 2018) (TRANSCRIPT). Should Kpler assert allegations of breach as a defense to Spire's breach claim, Spire will show those allegations to be meritless in the expedited litigation of its claim.

## II. Spire Will Suffer Irreparable Harm Absent Expedition

32. Kpler expressly agreed that its breach of the SPA would irreparably harm Spire. ¶ 11. Such provisions are enforceable under Delaware law and "alone suffice to establish . . . irreparable harm." *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1226 (Del. 2012).

33. This Court has routinely relied on such provisions to expedite claims like those brought by Spire. Indeed, when parties to an agreement have included "a stipulation as to irreparable harm and as to the availability of specific performance," there is a "relatively easy case for expedition." *Akorn*, C.A. No 2018-0300-JTL, at 45 (TRANSCRIPT) (ordering trial 74 days after filing of expedition motion).

34. Even absent the parties' agreement, expedited proceedings would be warranted to prevent irreparable harm. Specific performance is "the only method by which to adequately redress the harm threatened to [the company] and its stockholders" from breach of a merger agreement. *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 23 (Del. Ch. 2001); *see also Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715 (Del. Ch. 2008) (granting specific performance of a transaction after an expedited trial). That is, specific performance is the "preferred remedy" in cases like this. *Tiffany & Co. v. LVMH Moët Hennessy-Louis Vuitton SE*, C.A. No. 2020-0768-JRS, at 50-51 (Del. Ch. Sept. 21, 2020) (TRANSCRIPT)

("[W]hen the [plaintiff] carries its burden, that means specific performance as quickly as feasibly can be ordered.")

35. Moreover, this Court has acknowledged that whenever a merger is held in "limbo" by a buyer's refusal to close, the seller is at risk of irreparable injury. *See Akorn*, C.A. No. 2018-0300-JTL, at 47 (TRANSCRIPT) (noting that it is not "good for anyone . . . to be tied up in limbo under an agreement, while at the same time dealing with external pressures, be they stock market driven, customer market driven, supplier market driven, employment market driven, whatever the source"). Delaware courts have accordingly "been solicitous in accommodating parties with expedited proceedings to address a cloud over a merger transaction." *Channel Medsystems, Inc. v. Boston Sci. Corp.*, C.A. No. 2018-0673-AGB, at 52 (Del. Ch. Oct. 9, 2018) (TRANSCRIPT).

36. Kpler's actions to avoid consummating the deal create uncertainty and delay that harm Spire and expose the company to adverse effects on its business operations. ¶ 12. Kpler's failure to close has caused significant confusion and disruption among Spire employees, who are more likely to be poached by Spire's competitors as a result of Kpler's delay. ¶ 62. Kpler's delay and the resulting uncertainty have also damaged the Business's relationship with its customers and suppliers. *Id.*

37. As a result of its restatement process initiated in August 2024, Spire has triggered a default with its lender and, as a result, has been forced to negotiate waivers and amendments to its financing agreement. ¶ 63. A key strategic rationale of the transaction was to retire Spire's outstanding debt. *Id*. As Spire has publicly stated, it intends to use the proceeds of the sale to retire all outstanding debt and invest in near-term growth opportunities, which will "mitigate[] risk by removing the most significant external financial pressures." ¶ 24. Spire remains subject to that risk for as long as Kpler continues to delay closing. ¶ 63. Spire is also continuing to incur expense related to the restatement process, which it needs to pay off using the proceeds from the sale of the Business. *Id*.

38. Since the restatement process has prevented Spire from accessing the capital markets to finance its operations, selling the Business is one of its few remaining financing strategies and key to finalizing the restatement process and transforming Spire's cost structure and operating model. ¶ 64. Kpler's failure to consummate closing and its continued delay threaten to derail the restatement process and significantly impair Spire's enterprise value and ability to finance its operations. *Id.*

39. Kpler's continued failure to close could also subject Spire to external stock market pressure. Spire has communicated to investors that it anticipates

12

closing the transaction in Q1 2025. ¶ 65. Failing to consummate the transaction within that time may lead to speculation that the transaction may not close at all. *Id.*

40. An expedited schedule is necessary to avoid further deterioration of the Business and the resulting irreparable harm to Spire.

### III. Spire's Proposed Schedule Is Reasonable and No More Burdensome Than Necessary

41. Consistent with its public disclosures, Spire is seeking a March trial date to facilitate closing before the end of the first quarter of 2025. Given the limited facts at issue here, a trial during the week of March 24, 2025 provides the parties with sufficient time to complete pre-trial practice.

42. In seeking a trial approximately forty-two days from the filing of its complaint, Spire's request is consistent with expedition requests granted by this Court. *See, e.g.*, *Rohm & Haas Co. v. Dow Chem. Co.*, 2009 WL 445612, at *1 (Del. Ch. Feb. 6, 2009) (setting trial forty-two days following the motion to expedite); *In re IBP, Inc. v. Richard L. Bond*, C.A. No. 18373-VCS, at Dkt. 124 (Del. Ch. Apr. 16, 2001) (setting trial forty-five days following the motion to expedite).

43. Finally, this case is a simple one: the closing conditions set forth in the SPA were met, and Kpler failed to close. The limited factual issues here demonstrate that the parties can proceed to trial promptly. *See AB Stable VIII LLC*, C.A. No. 2020-0310-JTL, at 42-43 (Del. Ch. May 8, 2020) (TRANSCRIPT) (granting motion

13

to expedite where dispute was not "seriously fact-heavy" and "more of a case about the law and the contract").

## **CONCLUSION**

44.   For the foregoing reasons, Spire respectfully requests that the Court grant Spire's proposed order requesting expedited proceedings, requiring the parties to meet and confer on a pre-trial schedule, and scheduling a trial on the merits in the fourth week of March 2025.

OF COUNSEL:

SIMPSON THACHER &
BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice* forthcoming)
Meredith Karp (*pro hac vice* forthcoming)
Jacob Lundqvist (*pro hac vice* forthcoming)
Nora C. Hood (*pro hac vice* forthcoming)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Dated:  February 10, 2025

FAEGRE DRINKER
BIDDLE & REATH LLP

*/s/ Oderah C. Nwaeze*
Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com

*Attorneys for Plaintiff*

WORDS:  2,924 of 3,000

14

EFiled: Feb 10 2025 05:00PM EST
Transaction ID 75605713
Case No. 2025-0143-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| SPIRE GLOBAL, INC., | ) |
| Plaintiff, | ) C.A. No. 2025-____-___ |
| v. | ) |
| KPLER HOLDING SA, | ) |
| Defendant. | ) |

**ORDER GRANTING PLAINTIFF'S
MOTION FOR EXPEDITED PROCEEDINGS**

WHEREAS, the Court, having considered Plaintiff's *Motion for Expedited Proceedings* (the "Motion"), and for good cause having been shown therefore:

IT IS HEREBY ORDERED, this ___ day of _____ 2025, that:

1. Plaintiff's Motion is GRANTED;

2. The parties shall prepare for a one-day trial which will be held on March ___, 2025 at ___:___ a.m. in _____, Delaware.

3. The parties shall confer and submit a pre-trial scheduling order on or before _____ ___, 2025.

_____
(Vice) Chancellor

## **CERTIFICATE OF SERVICE**

Angela Lam, Esquire, hereby certifies that on February 12, 2025, true and copies of the foregoing were served electronically upon the following counsel:

>Rudolf Koch
>Jason J. Rawnsley
>Matthew D. Perri
>Richards, Layton & Finger, P.A.
>920 North King Street
>Wilmington, Delaware 19801

>*/s/ Angela Lam*
>Angela Lam (#6431)