**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SPIRE GLOBAL, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>KPLER HOLDING SA,<br><br>*Defendant.* | No. 1:25-cv-00168-GBW<br><br>**PUBLIC, REDACTED VERSION** |

**ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR EXPEDITED PROCEEDINGS</u>**

OF COUNSEL:

**WACHTELL, LIPTON, ROSEN & KATZ**
Graham W. Meli (*pro hac vice*)
Kevin S. Schwartz (*pro hac vice*)
Adebola O. M. Olofin (*pro hac vice*)
Joseph S. Tobin (*pro hac vice*)
Todd S. Gilman (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
(212) 403-1000
gwmeli@wlrk.com
ksschwartz@wlrk.com
aomolofin@wlrk.com
jstobin@wlrk.com
tsgilman@wlrk.com

**COOLEY LLP**
Sarah Lightdale (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Kaitland Kennelly (*pro hac vice*)
55 Hudson Yards
New York, NY  10001
(212) 479-6000
slightdale@cooley.com
pbowman@cooley.com
kkennelly@cooley.com

Dated:  February 25, 2025

**RICHARDS, LAYTON & FINGER, P.A.**
Rudolf Koch (#4947)
Jason J. Rawnsley (#5379)
Matthew D. Perri (#6066)
920 North King Street
Wilmington, DE  19801
(302) 651-7700
koch@rlf.com
rawnsley@rlf.com
perri@rlf.com

*Attorneys for Defendant Kpler Holding SA*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................4

    A.    Kpler and Spire enter into a Share Purchase Agreement that sets closing conditions and a November 2025 End Date. ............................................4

    B.    Kpler works diligently and cooperatively to close the transaction in accordance with its terms. ................................................................................5

    C.    Before the parties are able to close the transaction, the U.K.'s antitrust regulator launches an investigation that the parties are still addressing. .................7

    D.    Spire files a premature lawsuit and seeks an unreasonable trial schedule. ..............9

ARGUMENT ..............................................................................................................................10

I.     SPIRE'S REQUESTED SCHEDULE IS UNSUPPORTED BY FEDERAL LAW. .........11

    A.    No precedent in this District supports a trial within weeks of filing a complaint. 11

    B.    Spire's schedule ignores procedural requirements under the Federal Rules. ........13

II.    SIGNIFICANT TIME REMAINS BEFORE THE TRANSACTION'S END DATE TO ALLOW FOR A MORE REASONABLE EXPEDITED TRIAL SCHEDULE................................................................................................................15

CONCLUSION...........................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hanna* v. *Plumer*,
    380 U.S. 460 (1965)....................................................................................................11

*Kondaur Cap. Corp.* v. *Cajuste*,
    849 F. Supp. 2d 363 (E.D.N.Y. 2012) .....................................................................11

*Rohm & Haas Co.* v. *Dow Chemical Co.*,
    2009 WL 445612 (Del. Ch. Feb. 6, 2009) ...............................................................16

*Rumbaugh* v. *Beck*,
    491 F. Supp. 511 (E.D. Pa. 1980), *aff'd*, 636 F.2d 1210 (3d Cir. 1980)................13

*SecureBuy, LLC* v. *Cardinal Com. Corp.*,
    2014 WL 1217723 (D. Del. Mar. 21, 2014) .............................................................11

**Transcripts and Scheduling Orders**

*AB Stable VIII LLC* v. *MAPS Hotels and Resorts One LLC*,
    C.A. No. 2020-0310-JTL (Del. Ch. May 8, 2020) (TRANSCRIPT) ......................16

*Advanced Micro Devices, Inc. v. S3 Graphics Co.*
    No. CV 11-00965(D. Del. Oct. 13, 2011)................................................................16

*Akorn, Inc.* v. *Fresenius Kabi AG*,
    C.A. No. 2018-0300-JTL (Del. Ch. May 2, 2018) (TRANSCRIPT) .....................16

*Channel Medsystems, Inc.* v. *Boston Scientific Corp.*,
    C.A. No. 2018-0673-AGB (Del. Ch. Oct. 9, 2018) (TRANSCRIPT)....................15

*Cirba Inc.* v. *VMWARE, Inc.*,
    No. CV 19-00742 (D. Del. Apr. 25, 2019) .......................................................16, 17

*Gilat Satellite Networks Ltd.* v. *Comtech Telecomms. Corp.*,
    C.A. No. 2020-0605-JRS (Del. Ch. July 27, 2020) (TRANSCRIPT) ..............16, 17

*Gimaex Holding Inc.* v. *Spartan Motors USA Inc.*,
    No. CV 15-00515 (D. Del. Dec. 8, 2018) ..........................................................11, 12

*In re IBP, Inc.* v. *Richard L. Bond*,
    C.A. No. 18373-VCS (TRANSCRIPT)..............................................................16 n.3

*Noven Pharms., Inc. v. Mylan Techs. Inc.*,
    No. CV 17-1777 (D. Del. Dec. 8, 2017))...........................................................16 n.3

*SecureBuy LLC* v. *Cardinal Com. Corp.*,
No. CV 13-1792-LPS (D. Del. Mar. 4, 2014) (TRANSCRIPT) ............................................12

*United States* v. *U.S. Sugar Corp.*,
No. CV 21-01644 (D. Del. Jan. 7, 2022) (TRANSCRIPT)................................................12, 15

*United States* v. *Sabre Corp.*,
No. CV 19-01548 (D. Del. Sept. 26, 2019) (TRANSCRIPT) ..........................................12, 16

**Statutes and Rules**

15 U.S.C. § 25................................................................................................................................12

Clayton Act ...................................................................................................................................11

Fed. R. Civ. P. 4(d)(3)...................................................................................................................13

Fed. R. Civ. P. 16..........................................................................................................................13

Fed. R. Civ. P. 16(b)......................................................................................................................13

Fed. R. Civ. P. 26(a)(2)..................................................................................................................13

Fed. R. Civ. P. 26(f).......................................................................................................................13

U.K. National Security and Investment Act of 2021 ......................................................................4

## PRELIMINARY STATEMENT

On November 13, 2024, Kpler Holding SA ("Kpler") agreed to acquire the maritime data business of Spire Global, Inc. ("Spire") in a transaction valued at $241 million.  The parties entered into a Share Purchase Agreement (the "SPA") detailing the conditions that would need to be satisfied before the transaction could close.  Among these closing conditions were required regulatory approval, the accuracy of representations and warranties that Spire made in the agreement, the completion of an internal reorganization by Spire, and the absence of legal restraints on the transaction.  The parties recognized that satisfying these closing conditions could take time.  Thus, the SPA includes an "End Date" of November 13, 2025, allowing for termination of the agreement if the transaction has not closed by then.

Since signing the SPA, Kpler has worked diligently to close, including by cooperating with Spire to address concerns raised by regulators in multiple jurisdictions.  Kpler remains committed to closing the transaction in accordance with its terms and hopes to be able to do so in the coming weeks, long before the agreed-upon End Date.  The principal impediment to closing is not any lack of will by Kpler, but an investigation by the United Kingdom's antitrust regulator, the Competition and Markets Authority ("CMA").  ██████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████  Outside of this litigation, Kpler and Spire are working together to clear this impediment, as well as other remaining issues under the SPA.

Against this backdrop of ongoing efforts to close, the filing of this litigation was a premature gambit by Spire, based on a story of supposed breach that bears no resemblance to real-world events.  Kpler will respond to these allegations in full if this case proceeds.  The

present motion, however, presents a narrow question:  Should this case be tried on the merits within weeks of its filing, and just days from now?

The answer is no.  Kpler respectfully submits that there is neither a reason in fact nor a basis in law for such an expedited trial.  The Federal Rules set forth the steps that must take place before a case can be ready for trial:  from service of process, to motions to dismiss or answers, to amendments of the pleadings, to a Rule 26(f) conference, to document discovery and interrogatories, to fact depositions, to expert reports and depositions, to pretrial motions.  In a typical federal case, completing these steps can take years.  A trial during the week of March 24, as Spire initially requested, would have required the parties to complete all these steps within a month from now.  But virtually none of those steps has been completed yet.  Nor is it possible for the parties to complete any meaningful discovery and be ready for trial in a matter of days.  Kpler would be deprived of its rights to present a defense as provided by federal law and due process if it were required to go forward on this schedule.

Spire tries to frame this case as simple.  It is not.  Spire is asking the Court to order Kpler to close on a $241 million transaction, governed by a complex contract with numerous closing conditions, in the face of an active foreign antitrust investigation and several outstanding questions about Spire's compliance with the SPA.  Expert testimony on foreign law, among other issues, is required to show why all closing conditions are not satisfied.  Also needed is live testimony from multiple fact witnesses with knowledge of the SPA, the parties' businesses, and their efforts to close.  Relevant documents and witnesses are located abroad, as Kpler is headquartered in Brussels, further complicating fact discovery.  Indeed, Spire concedes that the case raises triable issues of fact, as it asks for a trial, not summary judgment.  Presenting the necessary factual issues to the Court would require a trial of multiple days, not one (or less) as

Spire requests.  And regardless of the complexity of the case, Spire cites no precedent, *ever*, for a trial held in this District within weeks of filing, let alone for all discovery and other pretrial proceedings to be completed in a few days.  Spire also fails to explain how it can ask this Court to rush to trial on a request for specific performance while a foreign regulator is in the midst of an antitrust investigation, creating the prospect of conflicting orders.

Kpler does not dispute that this case may warrant some degree of expedition if the parties' efforts to resolve the CMA investigation and close in the near term are unsuccessful. Rather, Kpler opposes Spire's request for an unprecedented and unnecessarily accelerated schedule in a case that involves complex factual and legal disputes.  The parties bargained for an End Date that is still nine months away, providing sufficient time for an orderly litigation in which Kpler is permitted to present its defense and the Court is not burdened by holding a trial at breakneck speed.  Even in the Delaware Court of Chancery cases setting expedited trials that Spire cites, a looming or expired End Date was often the driver of the schedule.  Here, Spire offers no competing reason why a March trial date has any significance under the parties' contract.  And while Spire claims (without evidence) that it needs Kpler's money more quickly because of financial hardship, those circumstances provide no contractual or other basis for Spire's proposed schedule.

Kpler thus respectfully requests that the Court deny Spire's motion for an expedited trial in March 2025.  The parties should be permitted to continue their ongoing efforts to close the transaction in accordance with its terms.  If those efforts prove unsuccessful and Spire continues to seek specific performance, Kpler would not oppose an expedited trial at the Court's convenience to allow for a decision before the agreed November 2025 End Date.

## BACKGROUND

**A.    Kpler and Spire enter into a Share Purchase Agreement that sets closing conditions and a November 2025 End Date.**

Kpler is a data and analytics firm incorporated in Belgium.  Compl. ¶ 15.  It provides global trade intelligence on commodities, energy, financial markets, and shipping and transportation.  *Id*.  Spire is a Delaware corporation headquartered in Vienna, Virginia.  *Id.* ¶ 14.  Spire owns and operates a network of commercial satellites that it uses to track maritime, aviation, and weather patterns.  *Id.*

In August 2024, Kpler sent a letter of intent to acquire Spire's maritime business.  *Id.* ¶ 20.  After receiving Kpler's letter, Spire entertained other offers, but Kpler ultimately prevailed in the sale process.  *Id.* ¶¶ 20-24.  On November 13, 2024, Kpler and Spire signed the SPA, which governs the terms of the transaction.  *Id.* ¶ 25.

The SPA provides that Kpler's obligation to close is contingent on the "satisfaction . . . at or prior to the Closing" of a number of "conditions."  *Id.* at Ex. 1, § 8.  These closing conditions include the accuracy of representations and warranties made by Spire; Spire's completion of a pre-closing internal reorganization; and the parties receiving all clearances required under the U.K. National Security and Investment Act of 2021 (the "NSI Act").  *Id.*  In addition, the closing is conditioned on the absence of certain governmental "restraints," including an order "preventing the consummation" or any "Law" that "makes consummation of the Transactions by [Kpler] illegal."  *Id.* § 8.3.  The SPA broadly defines "Law" to include any "ruling or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any" U.S. or foreign governmental entity.  *Id.* at p. A-10.

The SPA requires the parties to cooperate in resolving regulatory impediments before the End Date, which was defined to be twelve months after signing, on November 13, 2025.

*See* Compl. ¶ 28; *id.* at Ex. 1, p. A-6.  Among other things, Kpler and Spire each agreed to use "best efforts" and "cooperate with each other Party, to take, or cause to be taken, all actions" to make "the appropriate filings and submissions required to consummate" the transaction.  *Id.* at Ex. 1, § 6.1(a).  Kpler also agreed to use its "best efforts" to "eliminate each and every impediment that is asserted by [a] relevant Governmental Entity . . . so as to enable the Parties to consummate the Transactions *promptly and, in any event, prior to the End Date.*"  *Id.* at Ex. 1, § 6.1(c) (emphasis added).  ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████  *Id.* at Ex. 2, sched. 6.1(c) (emphasis added).

On the day the parties signed the SPA, Spire announced that it had agreed to sell its maritime business to Kpler for $241 million and that it "expected to close by the first quarter of 2025, *subject to satisfying customary closing conditions*."  *Id.* at Ex. 5, pp. 1-2 (emphasis added).  Spire's projection about when the transaction might close was not based on any contractual commitment by Kpler; the End Date in the SPA is not until November 2025.

**B.    Kpler works diligently and cooperatively to close the transaction in accordance with its terms.**

After signing the SPA, Kpler worked with Spire to satisfy the closing conditions, including navigating the necessary regulatory processes.  Compl. ¶ 41.  As a result of Kpler's efforts, the parties received clearance under the NSI Act on January 17, 2025.  *Id.* ¶ 42.

Spire alleges that, after receiving the NSI Act clearance on January 17, 2025, it told Kpler that it was prepared to close on January 24, 2025.  *Id.* ¶ 43.  Spire further alleges that the SPA gave it "the right to designate the date of the closing, which would occur no later than five

business days after" the satisfaction of all closing conditions.  *Id.* ¶ 43; *see also id.* Ex. 1, § 1.4.

Spire does not allege, however, that it provided Kpler with formal notice designating January 24

as the closing date under the SPA.  Nor does Spire allege that Kpler agreed that all closing

conditions were satisfied or that the parties both agreed that January 24 would be the closing

date.  Moreover, given that January 20 was not a business day in the United States (Martin

Luther King, Jr. Day and Inauguration Day), five business days after January 17 was

January 27—not January 24, as Spire claims.  *See id.* Ex. 1, p. A-4 (defining "Business Day" to

exclude a day on which "U.S. Federal Reserve Banks are closed").

   Regardless of Spire's alleged belief on January 17, 2025 about when closing could occur,

an issue then arose that the parties agreed to address before closing.  █████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████   *Id.* ¶ 44.  ████████████████████████████████████████████████

███████████████████████████████████████████████████████    *See id.*

Ex. 1, § 8.1.  ████████████████████████████████████████

███████████████████████████████████████    *See id.* § 3.10(b) & sched. 3.10;

*see also* Compl. ¶ 35.  ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████    *Id.* at Ex. 4, p. 1.[1]

---

[1] Other closing conditions would also have to be satisfied for the closing to occur, including
Spire's completion of the required internal reorganization, which was necessary to separate the
maritime business such that Spire could convey it to Kpler.



*See* Decl. of William Hugh Jordan Ellison ("Ellison Decl.") at 3.[2]

      **C.**    **Before the parties are able to close the transaction, the U.K.'s antitrust regulator launches an investigation that the parties are still addressing.**

. Ellison Decl. at 3.

*Id.*

*Id.*

*Id.* at 2.

---

[2] Kpler is submitting herewith a declaration from its U.K. antitrust counsel at Slaughter and May. The declaration describes the history and current state of discussions with the CMA, as well as the parties' ongoing efforts to address the CMA's concerns and close the transaction in accordance with its terms.



*Id.* at 4.

*Id.*

(emphasis added).

*Id.*

*Id.*

*Id.*

*Id.*

*Id.*

*Id.*

*See*

Compl. at Ex. 2, sched. 6.1(c). 

Ellison Decl. at 4.

*Id.*

### D.    Spire files a premature lawsuit and seeks an unreasonable trial schedule.

As the parties worked together to address the CMA's concerns, Spire filed a premature lawsuit in the Delaware Court of Chancery on February 10, 2025, seeking injunctive relief to force Kpler to close the transaction over the CMA's objections. Despite the End Date being *nine months away*, Spire also filed a motion requesting expedited proceedings with a trial set for March 24—*i.e.*, just 42 days after the case was filed. After Kpler removed Spire's action to this Court, Spire refiled its motion on February 19, seeking a trial commencing the week of March 24. D.I. 24. Spire's refiled motion continues to rely heavily on procedural precedent from the Delaware Court of Chancery, even though the case is now pending in this Court. *Id.*

Spire's request for an extremely expedited trial comes at the earliest stage of the litigation. Spire first requested that Kpler waive service of the complaint in this federal action on February 14, to which Kpler agreed the next business day, February 18. Spire has not completed that service by sending a waiver for Kpler to execute. Kpler has not yet had an opportunity to respond to the complaint. No initial disclosures have been exchanged. No third-party subpoenas have been served. No documents have been produced. No expert reports have been exchanged. No depositions have been taken. And *none* of the many other pretrial steps required under the Federal Rules and practice in this District have occurred.

On February 20, 2025, before Kpler had filed its opposition to the motion, the Court issued an order setting a one-day bench trial for March 4, 2025 (20 days before the date requested in Spire's motion).  D.I. 34.  On February 21, the Court issued an order indicating that the March 4 trial date had been "tentatively scheduled," permitting Kpler to file this response to Spire's motion, and scheduling oral argument on the motion.  D.I. 40.

## ARGUMENT

Spire asks this Court to set a trial in this action just weeks after it was filed.  This extraordinary request finds no support in this District's precedent.  Nor does it comport even with the state-court decisions on which Spire relies.  In a transaction where the parties agreed to a contractual End Date that is still nine months away, there would be no justification for scheduling a trial on an unrealistic schedule that deprives Kpler of its opportunity to conduct discovery and mount its defenses (and potential counterclaims) in a complex case.  Spire's proposed schedule is particularly unjustified given that Kpler is still working to close the transaction.

Much of Spire's argument focuses on whether the standards for expedited proceedings are met as a general matter.  This argument misses the point.  Kpler does not oppose some degree of expedited proceedings.  But the Court still must determine *how much* expedition is warranted under the circumstances.  Spire provides no basis for a trial in March.  If Kpler's efforts to close do not succeed in the near term, and Spire continues to seek injunctive relief, a trial later this year, sufficiently in advance of the November 2025 End Date, would be appropriate.

I.     **SPIRE'S REQUESTED SCHEDULE IS UNSUPPORTED BY FEDERAL LAW.**

A.     **No precedent in this District supports a trial within weeks of filing a complaint.**

Spire offers no precedent under federal law to support scheduling a trial within weeks of a case's filing. Spire's motion devotes six pages to arguing that the Court should expedite the trial as a general matter (D.I. 24 at ¶¶ 15–31), with just one sentence citing Court of Chancery cases to support its rushed schedule. *Id.* at ¶ 33. Those state-court cases are unlike this case, as discussed further below. But scheduling is a matter of procedure, governed in this Court by federal law. *See, e.g.*, *Hanna* v. *Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."); *Kondaur Cap. Corp.* v. *Cajuste*, 849 F. Supp. 2d 363, 372 (E.D.N.Y. 2012) (classifying a scheduling motion as procedural). And federal law does not support the schedule that Spire requests.

Although courts in this District have, on occasion, granted expedited trials in appropriate cases, even the fastest schedules have set the trial date *months* after filing of the complaint, not the mere *weeks* that Spire requests here. *See, e.g.*, Scheduling Order at ¶ 18, *Gimaex Holding Inc.* v. *Spartan Motors USA Inc.*, No. CV 15-00515 (D. Del. Dec. 8, 2018) (setting trial nine months after complaint); *SecureBuy, LLC* v. *Cardinal Com. Corp.*, 2014 WL 1217723, at *1 (D. Del. Mar. 21, 2014) (setting trial nine months after complaint); *Cirba Inc.* v. *VMWARE, Inc.*, No. CV 19-00742 (D. Del. Apr. 25, 2019) (setting trial nearly nine months after complaint); *Noven Pharms., Inc.* v. *Mylan Techs. Inc.*, No. CV 17-1777 (D. Del. Dec. 8, 2017) (setting trial nearly a year after complaint); *Advanced Micro Devices, Inc.* v. *S3 Graphics Co.*, No. CV 11-00965 (D. Del. Oct. 13, 2011) (setting trial seven months after complaint). Indeed, the shortest schedules in this District that Kpler has located have been in antitrust cases under the Clayton Act, but that federal statute expressly requires a district court to decide the case "as soon as may

11

be." 15 U.S.C. § 25.  And even in such cases, this District has scheduled trials five to six months

after the complaint, typically at the request of defendants seeking to oppose the government's

challenge to their merger.  *See* Scheduling Order at ¶ 13, *United States* v. *U.S. Sugar Corp.*,

No. CV 21-01644 (D. Del. Jan. 7, 2022) (setting trial nearly six months after the complaint was

filed); Scheduling Order at ¶ 15, *United States* v. *Sabre Corp.*, No. CV 19-01548 (D. Del. Sept.

26, 2019) (setting trial over five months after complaint).  Spire points to no federal authority for

moving here at a pace many times faster than even these unique antitrust precedents.

This case, which Spire launched only two weeks ago, is also at a much earlier procedural

posture than other cases expediting trials.  D.I. 2 Ex. A.  Courts in this District have typically

scheduled trials at conferences *months* after the plaintiff filed its complaint.  *See* Scheduling

Order, *Gimaex Holding Inc.* v. *Spartan Motors USA Inc.*, No. CV 15-00515 (D. Del. Dec. 8,

2018) (scheduling trial at a conference held five months after the complaint); Tr. of Oral

Argument at 62, *SecureBuy LLC* v. *Cardinal Com. Corp.*, No. CV 13-1792-LPS (D. Del. Mar. 4,

2014) (scheduling trial at a conference held three months after the complaint); Scheduling Order,

*Cirba Inc.* v. *VMWARE, Inc.*, No. CV 19-00742 (D. Del. Apr. 25, 2019) (issuing schedule over

four months after complaint); Scheduling Order, *Noven Pharms., Inc.* v. *Mylan Techs. Inc.*, No.

CV 17-1777 (D. Del. Dec. 8, 2017) (issuing schedule over four months after complaint);

*Advanced Micro Devices, Inc.* v. *S3 Graphics Co.*, No. CV 11-00965 (D. Del. Oct. 13, 2011)

(issuing schedule one month after complaint).  Courts have set expedited trial dates at these

conferences because the cases have already advanced "far along" procedurally.  Tr. of Oral

Argument at 62, *SecureBuy LLC* v. *Cardinal Com. Corp.*, No. CV 13-1792-LPS (D. Del. Mar. 4,

2014) (setting a trial six months after conference, and nine months after complaint, because

plaintiff had already worked out some of its counterclaim defenses and retained an expert); *see*

*also Rumbaugh* v. *Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (setting an "early trial" three

months after scheduling conference because "discovery [was] nearly completed, if not already

completed"), *aff'd*, 636 F.2d 1210 (3d Cir. 1980). The posture of this case, which is the opposite

of "far along," militates against the unprecedented schedule Spire requests.

    **B.**    **Spire's schedule ignores procedural requirements under the Federal Rules.**

    One of the reasons why no federal precedent supports Spire's proposed timeline is that

the Federal Rules require pretrial steps that cannot be accomplished in a couple of *months*, much

less the mere *weeks* that remain before the end of March. A defendant must first be served and

given an opportunity to respond to the complaint within the time provided in the Federal Rules.

Spire requested that Kpler waive service of process in this federal case on February 14. Under

Federal Rule of Civil Procedure 4(d)(3), Kpler has at least 60 days from the requested waiver (or

90 days if the waiver is considered to have been sent to Kpler abroad) to answer the complaint.

This means that Spire's proposed trial would happen well before Kpler is required to answer or

otherwise respond to the complaint, which is procedurally impossible.

    Spire also ignores all of the other steps that are required, and that take time, under the

Federal Rules and practice in this District. Spire has failed to consider the time required for a

scheduling conference, Fed. R. Civ. P. 16(b), or for a discovery conference, which must be held

at least 21 days before the scheduling conference. Fed. R. Civ. P. 26(f). Nor has Spire

considered the time for fact discovery, including requests for production and admissions,

interrogatories, and depositions, Fed. R. Civ. P. 30, 33-35, 45; or the time for expert discovery,

including opening and rebuttal reports, as well as depositions. Fed. R. Civ. P. 26(a)(2). The

parties also need time to make—and the Court needs time to rule on—pretrial motions, and the

parties and the Court need time to hold a pretrial conference. Fed. R. Civ. P. 16. These are not

mere roadblocks to a speedy resolution.  They are critical parts of any federal case that protect the parties' rights and allow the Court to make informed decisions.

Spire suggests that it can rush the schedule here because this case is a "simple one" with few factual disputes that require only a one-day trial.  D.I. 24 at ¶ 34.  Kpler disagrees.  This case involves a complex $241 million corporate transaction, and Kpler disputes many of Spire's allegations.  The list of factual issues in dispute is long and will require significant discovery from Spire, as well as multiple days of trial.  To take just one example, much of Spire's case is based on the premise that Kpler had an obligation to close on January 24, 2025.  But even that premise hinges on multiple disputed facts, including whether Spire designated January 24 as the closing date in accordance with the SPA, whether multiple different closing conditions were then satisfied (including the accuracy of Spire's representations and its completion of a required internal reorganization), and whether the parties agreed to close on a later date to address new allegations that Spire ███████████████████████  The email record known to Kpler shows that the parties' counsel understood by January 23 that the closing would not occur until later than Spire now claims for litigation purposes.  *See* Ellison Decl. at 3.  What other relevant facts may exist in Spire's internal files or in the recollection of its witnesses will be known only through discovery.



███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████  D.I. 4 at ¶ 9.  But even if January 24 were the proper closing date, ███████████████████████████████████
███████████  *See* Ellison Decl. at 3.  ███████████████████████████████████
███████████████████████████████████████████████  This

discovery will be further complicated by the cross-border elements of this case, with a foreign defendant and relevant witnesses in multiple different countries. *See* Tr. of Scheduling Conference at 49–50, *Channel Meds., Inc.* v. *Boston Sci. Corp.*, C.A. No. 2018-0673-AGB (Del. Ch. Oct. 9, 2018) (explaining that an expedited schedule was longer where "there was discovery, both domestic and foreign, and depositions of folks who resided both in the United States and outside of the United States"). Spire offers no explanation for its assertion that "significant discovery" does not "complicate" the case (D.I. 24 at ¶ 34), nor how that discovery and trial could all be completed by March in a case that was just filed in the middle of February. Subjecting Kpler to a trial without any meaningful opportunity to take necessary fact discovery, retain and present experts, and otherwise prepare its defense in a complex case with hundreds of millions of dollars at stake raises serious due process concerns.

In sum, Spire's request for a trial within a matter of weeks—or as early as next week—is unprecedented in this District and ignores the requirements of federal law, particularly in a complex case like this one. That request should be denied.

## II. SIGNIFICANT TIME REMAINS BEFORE THE TRANSACTION'S END DATE TO ALLOW FOR A MORE REASONABLE EXPEDITED TRIAL SCHEDULE.

Although Spire's requested trial schedule is unprecedented and unworkable, the November 2025 End Date in the parties' SPA allows for a more reasonable alternative schedule. Both federal and state cases setting expedited trials in the context of corporate transactions demonstrate the importance of such contractual deadlines. The District of Delaware, in antitrust suits seeking to block mergers, has scheduled expedited trials to leave time sufficient for a decision before the end date. Tr. of Scheduling Conference 13-14, *United States* v. *U.S. Sugar Corp.*, No. CV 21-01644 (D. Del. Dec. 18, 2021) (setting trial six months after complaint and five months before the end date); *see also* Tr. of Scheduling Conference at 16-17, *United States*

15

v. *Sabre Corp.*, No. CV 19-01548 (D. Del. Nov. 17, 2019) (acknowledging the potential urgency of the end date).

Similarly, the Delaware Court of Chancery has anchored expedited trials to the end date as "something that the parties bargained for" and thus "relevant to expedition."  Tr. of Scheduling Conference at 51, *Gilat Satellite Networks Ltd.* v. *Comtech Telecomms. Corp.*, C.A. No. 2020-0605-JRS (Del. Ch. July 27, 2020) (scheduling trial 24 days before the end date). Court of Chancery cases adopting more rapid schedules have often involved a contractual end date that had already passed or been extended.  Tr. of Scheduling Conference at 46-47, *Akorn, Inc.* v. *Fresenius Kabi AG*, C.A. No. 2018-0300-JTL (Del. Ch. May 2, 2018) (scheduling trial nine weeks out because the agreement was "already beyond the cutoff" date); *see also* Tr. of Scheduling Conference at 47, *AB Stable VIII LLC* v. *MAPS Hotels and Resorts One LLC*, C.A. No. 2020-0310-JTL (Del. Ch. May 8, 2020) ("I am influenced by the drop-dead date, which [had already been] extended. . . .").  Similarly, in *Rohm & Haas Co*. v. *Dow Chemical Co.*, 2009 WL 445612, at *1 (Del. Ch. Feb. 6, 2009), which Spire cites (D.I. 24 at ¶ 33), the Court of Chancery based the trial date on another looming contractual deadline after which one party's financing commitment would expire.  *Id.*[3]

Spire's requested March trial here is based on neither the contractual End Date nor any other specific upcoming deadline.  The only reason that Spire provides at all for a March trial is "to facilitate closing before the end of the first quarter of 2025"—a timeframe that Spire projected to the market when it announced the transaction last year.  D.I. 24 at ¶ 32.  Spire baldly

---

[3]    Spire also invokes *In re IBP, Inc.* v. *Richard L. Bond*, C.A. No. 18373-VCS, at Dkt. 124 (Del. Ch. Apr. 16, 2001), because the state court there scheduled a "trial forty-five days following the motion to expedite."  D.I. 24 at ¶ 33.  When the *IBP* court scheduled that trial, however, the case had already been in court for nearly six months and was well into discovery.  *In re IBP, Inc.* v. *Richard L. Bond*, C.A. No. 18373-VCS (Del. Ch. Mar. 30, 2001), ECF No. 35.  Not so here.

alleges that it is facing "external stock market pressure" generated by its own announcement that it had sued Kpler and that "closing may not be achieved according to that timeline." *Id.* at ¶ 29. But Spire's previous estimate that the transaction would close in the first quarter of 2025 was never tethered to any contractual commitment. Nor can Spire point to anything specific that would occur after March—like the termination of the parties' agreement or the expiration of a financing commitment—to necessitate conducting a trial in that timeframe.

Spire also argues that it wants to collect the proceeds of closing now to "invest[] in important, near-term growth opportunities." *Id.* at ¶ 13. Spire cites no authority for the proposition that one party's desire to collect money for investment merits expedition at all, let alone trial on an unprecedented pace. Spire "bargained for" a November 2025 End Date and thus bore the risk that other business opportunities might have to wait until the conditions to closing the transaction were satisfied. Tr. of Scheduling Conference, *Gilat Satellite Networks Ltd.* v. *Comtech Telecomms. Corp.*, C.A. No. 2020-0605-JRS, at 47 (Del. Ch. July 27, 2020). Spire's interest in getting its money faster cannot outweigh the undue burden and substantial prejudice that the proposed schedule would impose on Kpler, as well as the enormous strain on judicial resources.

Nor would setting a trial later than March somehow make closing "optional," as Spire asserts. D.I. 24 at ¶ 30. Kpler remains bound by the SPA while that contract remains in effect. But Kpler is not required to close unless the closing conditions are satisfied. And Kpler should not be forced to close on a $241 million transaction—an irreversible action—until it has had the chance to fairly litigate Spire's claims about whether those conditions are satisfied, in a trial that abides by established legal principles.

17

## CONCLUSION

For the foregoing reasons, the Court should deny Spire's request to set an expedited trial in March 2025. If Kpler is unable to clear the current regulatory impediment and close the transaction in accordance with its terms in the coming weeks, any outstanding request for specific performance can be addressed in a trial later before the parties' agreed November 2025 End Date.

OF COUNSEL:

**WACHTELL, LIPTON, ROSEN & KATZ**
Graham W. Meli (*pro hac vice*)
Kevin S. Schwartz (*pro hac vice*)
Adebola O.M. Olofin (*pro hac vice*)
Joseph S. Tobin (*pro hac vice*)
Todd S. Gilman (*pro hac vice*)
51 West 52nd Street
New York, NY 10019
(212) 403-1000
gwmeli@wlrk.com
ksschwartz@wlrk.com
aomolofin@wlrk.com
jstobin@wlrk.com
tsgilman@wlrk.com

**COOLEY LLP**
Sarah Lightdale (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Kaitland Kennelly (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
(212) 479-6000
slightdale@cooley.com
pbowman@cooley.com
kkennelly@cooley.com


Dated: February 25, 2025

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ *Rudolf Koch*
Rudolf Koch (#4947)
Jason J. Rawnsley (#5379)
Matthew D. Perri (#6066)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
koch@rlf.com
rawnsley@rlf.com
perri@rlf.com

*Attorneys for Defendant Kpler Holding SA*

## CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that on February 25, 2025, a true and correct copy of the

foregoing was caused to be served on the following counsel via electronic mail:


Jonathan K. Youngwood
Meredith Karp
Jacob Lundqvist
Nora C. Hood
SIMPSON THACHER &
BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
meredith.karp@stblaw.com
jacob.lundqvist@stblaw.com
nora.hood@stblaw.com

Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
FAEGRE DRINKER
BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com


*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)