**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Spire Global, Inc.,<br><br>      *Plaintiff,*<br><br>   *v.*<br><br>Kpler Holding SA,<br><br>      *Defendant.* | Civil Action No. 25-168-GBW<br><br>**REDACTED VERSION** |

## <u>DEFENDANT KPLER HOLDING SA'S ANSWER<br>TO VERIFIED COMPLAINT</u>

Kpler Holding SA ("Kpler"), through its undersigned counsel, hereby answers Spire

Global, Inc.'s ("Spire") Verified Complaint dated February 10, 2025 (the "Complaint") as follows:

### <u>GENERAL DENIAL</u>

Except as otherwise expressly stated herein, Kpler generally denies each and every

allegation in the Complaint (all of which are reproduced herein). Further, Kpler reserves the right

to challenge the authenticity of all sources and documents referred to or purportedly quoted from

in the Complaint. Further, in each case where Kpler admits that Spire has quoted a portion of a

document, Kpler does not thereby admit any allegation concerning the document's application,

any characterization of the document or portion thereof, or that Spire's selective quotation fairly

or accurately represents the document as a whole, and Kpler respectfully refers the Court to such

document for a true and complete account of its contents.

Kpler reserves the right to seek to amend or supplement its Answer as may be necessary

or appropriate.

## RESPONSES TO SPECIFIC ALLEGATIONS

## NATURE OF THE ACTION

1.      Spire files this action to hold Kpler to its contractual obligations under the November 13, 2024 Share Purchase Agreement (the "SPA") to acquire Spire's maritime business (as defined in the SPA, the "Business"). The parties entered into the SPA after a highly competitive sales process. The SPA gives Kpler a right to avoid closing only in limited circumstances, none of which have occurred here. In addition, the SPA includes a "hell-or-high-water" provision obligating Kpler to take any and all actions necessary to eliminate each and every regulatory impediment to closing. Kpler's willingness to include this provision and assume all regulatory risk was a key reason Spire selected Kpler over other competing bidders.

**ANSWER:** Kpler admits that the parties entered into a Share Purchase Agreement dated November 13, 2024 (with the Schedules and Exhibits incorporated therein, the "SPA"). Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 1 relating to Spire's "sales process" or any "key reason[s]" why Spire entered into the SPA, and on that basis denies them. The third and fourth sentences in paragraph 1 appear to characterize the terms of the SPA, to which Kpler respectfully refers the Court for its complete and accurate contents. The remaining allegations in paragraph 1 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

2.      Following execution of the SPA, Spire worked diligently to satisfy all conditions to closing, and all conditions to closing had been satisfied or could be satisfied as of January 17, 2025. While Kpler initially participated in the pre-closing steps required under the SPA, Kpler reversed course shortly before closing was set to occur.

**ANSWER:** Kpler admits that, at all times, it has complied with its obligations under the SPA. Kpler denies the remaining allegations in paragraph 2.

3.      On January 17, 2025, Spire informed Kpler that closing would occur on January 24, 2025. On January 24, 2025, Spire's counsel reiterated to Kpler's counsel that "Spire still intends and remains ready, willing and able to close today as scheduled." Kpler failed to consummate the closing on that day without justification. Kpler has not identified any unmet condition to closing, nor does the SPA give Kpler the option to delay closing once all closing conditions have been met. Kpler's conduct plainly violates the SPA and entitles Spire to injunctive relief compelling Kpler to honor its contractual obligations and consummate the transaction.

**ANSWER:** Kpler denies the allegations in the first sentence of paragraph 3. To the extent the second sentence in paragraph 3 purports to quote from or characterize an email, Kpler admits that the Complaint quotes certain portions of that email but denies Spire's characterization and refers the Court to the email for a true and complete account of its contents. The remaining allegations in paragraph 3 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

4.      In discussions and correspondence around the intended closing date, Kpler has raised certain pretextual reasons why it believes closing cannot proceed. These purported justifications fail to excuse Kpler's conduct. First, Kpler has attempted to hold up the closing over its ongoing negotiations with a third-party data supplier to the Business (the "Supplier"). In its pre-signing offer letter, Kpler



**ANSWER:** Kpler denies the allegations in the first through third sentences of paragraph 4. To the extent the fourth sentence in paragraph 4 purports to quote from or characterize a letter, Kpler admits that the Complaint quotes certain portions of that letter but denies Spire's characterization and refers the Court to the letter for a true and complete account of its contents. The remaining allegations in paragraph 4 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

5.      After the parties signed the SPA and announced the transaction,  does not trigger a Material Adverse Effect ("MAE") or render Spire's representations regarding the Business and its existing contracts inaccurate.

**ANSWER:** Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 5 relating to         and on that basis denies the allegations in the first sentence of paragraph 5. The remaining allegations in

3

paragraph 5 consist of legal conclusions, to which no response is required; to the extent a response

is deemed required, Kpler denies those allegations.

6.     The definition of an MAE is limited to any event that currently "is" having a materially adverse effect on the Business, and expressly excludes effects "resulting directly or indirectly from the announcement, execution or delivery of the Agreement or the pendency or consummation of the Transactions, including any disruption in (or loss of) supplier, service provider, partner or similar relationships." Ex. 1 (SPA) at Ex. A. ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Moreover, Spire's representations that no unresolved notices of breach or default have been received is limited to the time of signing—not closing— and intended to avoid precisely the type of scenario where a party attempts to use ███████████ ██████████████████████ as an excuse for not closing.

**ANSWER:**  To the extent paragraph 6 purports to quote from or characterize the SPA,

Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's

characterizations and refers the Court to the SPA for a true and complete account of its contents.

The remaining allegations in paragraph 6 consist of legal conclusions, to which no response is

required; to the extent a response is deemed required, Kpler denies those allegations.

7.     In any event, after Kpler threatened to delay closing over the various purported issues with Supplier, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████

**ANSWER:**  Kpler admits that it has worked ████████████████████████████████

████████████████████████████████████████████████████████████████. Kpler

otherwise denies the allegations in paragraph 7.

8.     Second, instead of using best efforts to take "any and all actions" necessary to remove any regulatory impediment to closing as required under the hell-or-high-water provision (*id.* § 6.1; *see also* Ex. 2 at Schedule 6.1(c)), Kpler has ████████████████████████████ ████████████████████████████████████████████████████.

**ANSWER:** To the extent paragraph 8 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA, but denies Spire's characterization and refers the Court to the SPA for a true and complete account of its contents. Kpler otherwise denies the allegations in paragraph 8.

9.      Kpler has attempted to justify its refusal to close based on a 

The SPA is clear that the only orders that can prevent closing are those that have been issued by a relevant governmental entity, remain outstanding as of the time of closing, and actually prevent the parties from consummating the transaction. No such order had been issued at the time of closing, nor has any such order been issued since.

**ANSWER:** As to the first four sentences of paragraph 9, Kpler admits ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████; Kpler otherwise denies the allegations in those sentences. To the extent the fifth sentence of paragraph 9 purports to characterize the SPA, Kpler denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 9 consist of legal conclusions to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

10.      Kpler's apparent buyer's remorse does not excuse its obligations to complete the closing. Kpler cannot manufacture obstacles to closing through its own refusal to ████████ ███████████████ and foot-dragging to avoid working through the regulatory process.

**ANSWER:** Kpler denies the allegations in paragraph 10.

11.      Spire and Kpler expressly agreed that "irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur in the event that the Parties do not perform their obligations under the provisions of this Agreement," and Spire "shall be entitled to an injunction or injunctions, specific performance, or other equitable relief" to prevent breaches of the SPA and to compel Kpler to consummate the transaction. Ex. 1 (SPA) § 12.13.

**ANSWER:** To the extent paragraph 11 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 11 consist of legal conclusions to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

12.    Equitable relief is necessary here to prevent irreparable harm to Spire. Kpler's failure and continued refusal to consummate the transaction create uncertainty and delay that harm Spire and expose the company to adverse effects on its business operations.

**ANSWER:** Paragraph 12 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the allegations in paragraph 12. Kpler specifically denies that Spire is entitled to any form of relief, including equitable relief.

13.    Accordingly, Spire requests an order of specific performance requiring Kpler to fulfill its obligations under the SPA and consummate the closing in accordance with the terms of the SPA. Spire also requests declaratory judgment declaring that Kpler has breached its obligations under the SPA and is not excused from performing its obligations under the SPA, including proceeding with the closing.

**ANSWER:** Kpler admits that Spire's Complaint includes a request for specific performance. The remaining allegations in paragraph 13 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the remaining allegations in paragraph 13. Kpler specifically denies that Spire is entitled to any form of relief, including equitable or declaratory relief.

## THE PARTIES

14.    Plaintiff Spire is a Delaware corporation headquartered in Vienna, Virginia. Spire owns and operates one of the world's largest constellations of commercial satellites, which it uses to track maritime, aviation and weather patterns. Spire supplies space-based data and analytics that offer its customers unique insights, including, for example, government entities responsible for monitoring risks such as extreme weather events and wildfire risk. Spire's common stock is publicly listed on the New York Stock Exchange under the ticker "SPIR."

**ANSWER:** Kpler admits the allegations in paragraph 14.

15. Defendant Kpler is a Belgian corporation headquartered in Brussels, Belgium. Kpler is a data and analytics firm that offers global trade intelligence on commodities, energy, financial markets, and shipping & transportation.

**ANSWER:** Kpler admits the allegations in paragraph 15.

## JURISDICTION, VENUE AND GOVERNING LAW

16. This Court has subject matter jurisdiction over this action under 10 *Del. C.* § 341, 8 *Del. C.* § 111(a), and 6 *Del. C.* § 2708.

**ANSWER:** Paragraph 16 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler admits that this Court has subject matter jurisdiction over this action.

17. Venue is proper before this Court. Under the SPA, each party "irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of the state and federal courts located in Delaware." Ex. 1 (SPA) § 12.15.

**ANSWER:** To the extent paragraph 17 purports to quote from or characterize the SPA, Kpler refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 17 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler admits that venue is proper in this Court.

18. The SPA is governed by Delaware law. *Id.*

**ANSWER:** Kpler admits the allegations in paragraph 18.

## FACTUAL ALLEGATIONS

19. On August 14, 2024, Spire disclosed to the SEC that it had been reviewing its accounting practices and procedures with respect to revenue recognition as to certain contracts and determined that certain of its previously issued financial statements need to be restated to adjust the timing of when revenue is recognized under these contracts. *See* Ex. 3 (8/27/24 8-K).

**ANSWER:** Kpler admits that Spire filed a Form NT 10-Q with the Securities and Exchange Commission ("SEC") on August 14, 2024, and that Spire filed a Form 8-K with the SEC on August 27, 2024. To the extent paragraph 19 purports to characterize those filings, Kpler denies Spire's characterizations and refers the Court to the filings for a true and complete account of their

contents. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of any information "disclosed to the SEC" by Spire, and on that basis denies the remaining allegations in paragraph 19.

20.    On August 20, 2024, Spire received an unsolicited letter of intent from Kpler, proposing the acquisition by Kpler of Spire's maritime business, which provides analytics insights for the maritime and commodity markets, including vessel data for ship tracking and situational awareness solutions. In response to the letter, Spire directed its investment banker to commence an auction process. The auction process was competitive, with multiple bidders submitting proposals on attractive terms.

**ANSWER:**  Kpler admits that it sent a letter addressed to Spire and its investment banker on August 20, 2024 that proposed an acquisition by Kpler of Spire's maritime business and that Spire's maritime business provides analytics insights for the maritime and commodities markets, including vessel data for ship tracking and situational awareness solutions. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in paragraph 20, and on that basis denies them.

21.    Another bidder emerged with a superior offer, which Kpler was initially unwilling to match. Spire's investment banker notified Kpler on October 21, 2024 that Spire would be abandoning discussions with Kpler and moving forward with another bidder.

**ANSWER:**  Kpler denies the allegations in paragraph 21.

22.    The next day, on October 22, 2024, Kpler sent a confidential offer (the "Offer Letter") that ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████ *See* Ex. 4 (10/22/2024 Offer Letter).

**ANSWER:**  Kpler admits that it sent a letter addressed to Spire and its investment banker on or about October 22, 2024. To the extent paragraph 22 purports to quote from or characterize the October 22, 2024 letter, Kpler admits that the Complaint quotes certain portions of the October 22, 2024 letter but denies Spire's characterizations and refers the Court to the letter for a true and complete account of its contents. Kpler denies the remaining allegations in paragraph 22.

23.    Ultimately, based on Kpler's commitment to provide certainty of closing despite regulatory risks, Kpler's willingness to manage any risks associated with Supplier without any closing condition, and Kpler's commitment to do everything necessary to timely close the transaction despite any regulatory impediments, Spire elected to enter into a transaction with Kpler.

**ANSWER:**  Kpler admits that Spire and Kpler entered into the SPA. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 23 relating to the reasons Spire elected to enter into the SPA, and on that basis denies them. Kpler denies the remaining allegations in paragraph 23.

24.    On November 13, 2024, Spire announced that it had entered into an agreement for the sale of the Business to Kpler and anticipated a closing in the first quarter of 2025. The announcement further noted that Spire intended to use the proceeds from the transaction to retire all of its outstanding debt, which would "mitigate[] risk by removing the most significant external financial pressures," and to invest in near-term growth opportunities. *See* Ex. 5 (11/13/24 Press Release).

**ANSWER:**  Kpler admits that Spire issued a press release on November 13, 2024. To the extent paragraph 24 purports to quote from or characterize that press release, Kpler admits that the Complaint quotes certain portions of the press release but denies Spire's characterizations and refers the Court to the press release for a true and complete account of its contents.

25.    The terms of the transaction are governed by the SPA executed on November 13, 2024.

**ANSWER:**  Kpler admits the allegations in paragraph 25.

26.    Under the SPA, at closing, Spire and its applicable subsidiaries will transfer all equity interests in the Business and certain related assets to Kpler or its applicable subsidiaries, and Kpler will pay $233,500,000, subject to customary adjustments, and enter into agreements pursuant to which Kpler will pay an additional $7,500,000. *See* Ex. 1 (SPA) §§ 1.2, 2.1, 2.3.

**ANSWER:**  To the extent paragraph 26 purports to characterize the SPA, Kpler denies Spire's characterization and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 26 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

27.     The SPA requires Kpler to use "best efforts" and to cooperate with Spire "to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, appropriate or desirable to make or cause to be made the appropriate filings and submissions required to" meet all regulatory requirements for the transaction. *Id*. § 6.1(a).

**ANSWER:** To the extent paragraph 27 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 27 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

28.     In addition, Kpler expressly agreed to "use best efforts, and to take any and all actions necessary, to eliminate each and every impediment that is asserted by [a] relevant Governmental Entity under the Specified Laws so as to enable the Parties to consummate the Transactions promptly and, in any event, prior to the End Date," *i.e.*, November 13, 2025. *Id.* § 6.1(c), Ex. A.

**ANSWER:** To the extent paragraph 28 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterization and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 28 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

29.     Schedule 6.1(c) further specifies ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Ex. 2 (SPA Disclosure Schedules) at Schedule 6.1(c).

**ANSWER:**  To the extent paragraph 29 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterization and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 29 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

30.    This "hell-or-high-water" provision was a highly negotiated, key provision of the SPA. Kpler's willingness to assume any regulatory risk related to the transaction was a key reason why Spire selected Kpler over other competing bidders.

**ANSWER:**  Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 30 relating to any "key reason[s]" why Spire entered into the SPA or the existence of "competing bidders" at the time the parties entered into the SPA, and on that basis denies them. To the extent the second sentence in paragraph 30 purports to characterize the SPA, Kpler denies Spire's characterization and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 30 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

31.    The SPA includes customary covenants regarding Spire's conduct of the Business between signing and closing. *See* Ex. 1 (SPA) § 6.3. Spire may not, without Kpler's consent, enter into any settlement or compromise agreement involving monetary damages in excess of $15,000 or imposing equitable relief on the Business. Kpler's consent to any agreement exceeding these restrictions shall not, however, be "unreasonably withheld, conditioned or delayed":

> During the Pre-Closing Period, except . . . with Buyer Parent's consent (which shall not be unreasonably withheld, conditioned or delayed) . . . neither Seller Parent nor the Target Companies shall with respect to the Business:
>
> . . .
>
> (n) waive, release, assign, compromise, commence, settle or agree to settle any Legal Proceeding, other than waivers, releases, compromises or settlements in the ordinary course of business that (i) involve only the payment of monetary damages not in excess of $15,000 individually or $500,000 in the aggregate if paid by any Target Company or where the payment is paid prior to the Closing or is paid by any Person other than such Target Company and (ii) do not include the imposition of equitable relief on, or the admission of wrongdoing by, any Target Company[.]

*Id.* § 6.3(n).

**ANSWER:** To the extent paragraph 31 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 31 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

32.    The SPA includes limited, customary conditions to closing in Sections 8 and 9 of the SPA. Section 8.1 requires that Spire's representations and warranties, including its representations and warranties regarding the divested Business, be true and correct as of the closing, except to the extent the representations are made as of an earlier date, and except where the failure of such representations and warranties to be true and correct would not constitute an MAE. *Id.* § 8.1. Section 8.4 requires that "there shall not have occurred any Material Adverse Effect" since the SPA had been executed. *Id.* § 8.4.

**ANSWER:** To the extent paragraph 32 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents.

The remaining allegations in paragraph 32 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

33.    "Material Adverse Effect" is narrowly defined as: "any effect that is materially adverse to the assets, Liabilities, financial condition or existing business, of the Business (taken as a whole)." Id. at Ex. A. It does not extend to events that in the future could or would be reasonably expected to result in an MAE.

**ANSWER:** To the extent paragraph 33 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 33 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

34.    The SPA is explicit that the following events, among others, do not constitute an MAE:

(c) any adverse effect resulting from changes in regulatory, legislative or political conditions in the United States or any other country or region in the world, except to the extent such change in regulatory, legislative or political condition has a materially disproportionate effect on the Business as compared to any of the other companies in the Business's industry, in which case only the incremental disproportionate adverse impact may be taken into account in determining whether there has occurred a Material Adverse Effect

. . .

(e) any adverse effect resulting directly or indirectly from the announcement, execution or delivery of the Agreement or the pendency or consummation of the Transactions, including any disruption in (or loss of) supplier, service provider, partner or similar relationships or any loss of employees

. . .

(i) any adverse effect resulting directly or indirectly from any breach by Buyer Parent of any provision of this Agreement or the taking of any other action by Buyer Parent

*Id.*

**ANSWER:** To the extent paragraph 34 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's

characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 34 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

35.     Spire also made customary representations and warranties regarding the Business in Section 3 of the SPA. Section 3.10(b) states that, as of the date of signing, *i.e.*, November 13, 2024:

> *With respect to each Material Contract listed in Section 3.10(a) of the Disclosure Schedule: (i) such Material Contract is with respect to each party thereto other than a Seller Party, binding and enforceable against such party in accordance with its terms, subject to (A) Laws of general application relating to bankruptcy, insolvency and the relief of debtors, and (B) rules of Law governing specific performance, injunctive relief and other equitable remedies; and (ii) no Target Company is in material breach or material default of such Material Contract or, with the giving of notice or the giving of notice and passage of time without a cure would be, in material breach or material default of such Material Contract, and to Seller Parent's Knowledge, no other party to such Material Contract is in material breach or material default of such Material Contract. No Seller Party has received unresolved written notice as of the date hereof of (i) any material default under any Material Contract or (ii) the intention of any Person to terminate any Material Contract or materially modify the terms thereof. Seller Parent has delivered or otherwise made available to Buyer Parent a true and complete copy of each such Material Contract.*

*Id.* § 3.10(b).

**ANSWER:** To the extent paragraph 35 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 35 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

36.     The SPA gives Spire the right to designate the date of the closing, which would occur no later than five business days after "the satisfaction or waiver of all conditions set forth in Section 8 and Section 9 (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing) or such other date or time as the Parties mutually agree in writing." SPA § 1.4.

**ANSWER:** To the extent paragraph 36 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 36 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

37.     The circumstances in which Kpler can terminate the transaction are narrowly circumscribed. Either party generally may terminate the SPA after the End Date if the transaction has not closed by that date. Kpler can also terminate the SPA if the transaction has been permanently enjoined by a governmental entity or if Spire has materially breached the SPA. Specifically, the SPA provides for termination prior to closing:

>     (c)     by either [Kpler] or [Spire], if a Governmental Entity shall have issued a final and nonappealable order having the effect of permanently restraining, enjoining or otherwise prohibiting the Transactions; provided, that a Party shall not be permitted to terminate this Agreement pursuant to this Section 10.1(c) if such Party did not use commercially reasonable efforts to have such order vacated prior to its becoming final and nonappealable;
>
>     (d)     by [Kpler], if [Spire] shall have materially breached or materially failed to perform any of its representations, warranties, covenants or agreements contained in this Agreement, which material breach or failure to perform (i) would give rise to the failure of a condition set forth in Section 8.1 or Section 8.2 and (ii) cannot be or has not been cured within 30 calendar days following receipt by [Spire] of written notice of such material breach or failure to perform;

*Id.* § 10.1.

**ANSWER:** To the extent paragraph 37 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 37 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

38.     Kpler and Spire agreed that specific performance would be available as a remedy to force the parties to perform their carefully negotiated obligations. Specifically, Section 12.13 of the SPA provides that:

The Parties agree that irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur in the event that the Parties do not perform their obligations under the provisions of this Agreement in accordance with its specified terms or otherwise breach such provisions. The Parties acknowledge and agree

that (a) the Parties shall be entitled to an injunction or injunctions, specific performance, or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof ... without proof of damages or otherwise, this being in addition to any other remedy to which they are entitled under this Agreement or at law or in equity and (b) the right of specific performance is an integral part of the Transactions and without that right, none of the Seller Parties or Buyer Parent would have entered into this Agreement. The right to specific enforcement hereunder shall include the right of [Spire] to cause [Kpler] to purchase the Purchased Equity and to consummate the other Transactions, on the terms and subject to the conditions set forth in this Agreement.

*Id.* § 12.13.

**ANSWER:** To the extent paragraph 38 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 38 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

39.    Section 12.13 of the SPA also states that, "Each of the Parties agrees that it will not oppose the granting of an injunction, specific performance and other equitable relief on the basis that the other Parties have an adequate remedy at law or an award of specific performance is not an appropriate remedy for any reason at law or equity." *Id.*

**ANSWER:** To the extent paragraph 39 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA. Kpler refers the Court to the SPA for a true and complete account of its contents.

40.    Finally, in the event of a dispute between the parties to enforce the SPA, "the prevailing Party . . . shall be entitled to receive a reasonable sum for its attorneys' fees and all other reasonable costs and expenses incurred" in litigating such a dispute. *Id.* § 12.6.

**ANSWER:**  To the extent paragraph 40 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 40 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

41.    Following execution of the SPA, Spire worked diligently to satisfy all conditions to closing. Kpler initially endeavored to meet the closing conditions and to work through all necessary regulatory processes.

**ANSWER:**  Kpler admits that, at all times, it has complied with its obligations under the SPA. The remaining allegations in paragraph 41 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

42.    On January 17, 2025, Kpler received the required clearance under the United Kingdom National Security and Investment Act of 2021, the last unmet condition to closing. Thus, as a result of the parties' mutual efforts, all of the conditions set forth in Sections 8 and 9 of the SPA (other than those conditions that by their nature were to be satisfied at closing) were satisfied as of that date.

**ANSWER:**  Kpler admits that the transaction received clearance under the United Kingdom National Security and Investment Act of 2021 on January 17, 2025 but denies that this was the "last unmet condition to closing." The remaining allegations in paragraph 42 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations. Kpler specifically denies that "all of the conditions set forth in Sections 8 and 9 of the SPA (other than those conditions that by their nature were to be satisfied at closing) were satisfied as of" January 17, 2025.

43.     Representatives of Spire and Kpler met on January 17, 2025 to confirm that the requisite closing conditions had been satisfied and to designate Friday, January 24, 2025 as the "Closing Date" in accordance with the procedures set forth in Section 1.4 of the SPA. Kpler confirmed it would be taking the necessary steps to fund the purchase price on such date.

**ANSWER:**  Kpler admits that representatives of Kpler and Spire participated in a call on January 17, 2025. Kpler denies the remaining allegations in paragraph 43.

44.     On January 20, 2025, the parties held a call to coordinate final preparations for closing. During that call, Kpler expressed concern about the progress of its negotiations with Supplier, which had requested additional concessions from Kpler ███████████████████████████████████████████████████████████. On that call, Spire confirmed that these developments did not affect its ability or willingness to certify the satisfaction of applicable conditions on the expected Closing Date.

**ANSWER:**  Kpler admits that representatives of Kpler and Spire participated in a call on January 20, 2025. Kpler further admits that, during that call, Kpler expressed concerns about ███ ██████████████████████████████████████████████. Kpler further admits that Spire indicated during that call that it was willing to continue working towards completion of the transaction. Kpler denies the remaining allegations in paragraph 44.

45.     Spire was ready, willing and able to go forward with the closing on January 24, 2025, and Kpler was contractually obligated to close on that date. Nonetheless, Kpler reversed course and declined to close on January 24, 2025 in breach of the SPA.

**ANSWER:**  Kpler denies the allegations in paragraph 45.

46.     Kpler has offered two purported justifications for its breach of the SPA and refusal to close: (i) Kpler's ongoing but unresolved renegotiation of the Supplier Agreement and ███████████████████████████████████████████████ and (ii) regulatory developments ████████████████. Neither after-the-fact excuse precludes the parties from proceeding with the closing, nor do they permit Kpler to ignore its contractual obligations.

**ANSWER:**  Kpler admits that, prior to Spire's commencement of the instant action, Kpler communicated concerns to Spire ███████████████████████████████████████ ███████████████████████████████████████████████. Kpler otherwise denies the allegations in paragraph 46.

47.    From the outset of the bidding process, Kpler ████████████████████████████████████████████████████████████████████████████████████ Ex. 4 (10/22/2024 Offer Letter). Nonetheless, in the months following signing, Kpler has not entered into a final agreement on renegotiated terms, and has pointed to the lack of a finally executed agreement as a reason to delay the closing. The fact that Kpler has not signed an agreement with Supplier in no way prevents Kpler from honoring its obligations under the SPA. Kpler did not make a successful renegotiation of the Supplier Agreement a condition to closing. And, in any event, Spire understands that Kpler and Supplier have since concluded renegotiations and Supplier is ready to sign an acceptable revised agreement. Thus, there is no impediment to closing from the fact that Kpler has not yet signed a renegotiated Supplier Agreement.

**ANSWER:** Kpler admits that it sent a letter addressed to Spire and its investment banker on or about October 22, 2024. To the extent paragraph 47 purports to quote from or characterize the letter, Kpler admits that the Complaint quotes certain portions of the October 22, 2024 letter but denies Spire's characterizations and refers the Court to the letter for a true and complete account of its contents. The remaining allegations in paragraph 47 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

48.    Kpler has also pointed to ████████████████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:** Kpler admits that, prior to Spire's commencement of the instant action, Kpler communicated with Spire regarding a ████████████████████████████████ ████████████████████. Kpler otherwise denies the allegations in paragraph 48.

49.    After the parties announced the signing of the SPA, ████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████.

**ANSWER:** Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 49, and on that basis denies them.



50. ███████████████████████████████████████████████████
█████ does not preclude a closing under the SPA. The representation in Section 3.10(b) regarding "Material Contracts" applies only if Spire or its applicable subsidiary "is" in material breach or material default, or "would be" in material breach or material default of such a contract given notice or absent cure. Ex. 1 (SPA) § 3.10(b). ███████████████████████████████
██████████████ In addition, the representation in Section 3.10(b) regarding any unresolved written notice of material default or a third-party's intention to terminate a "Material Contract" applies only as of the date of the SPA, *i.e.*, November 13, 2024. █████████████████████████
███████████████████████████████████████████████ In any event, an inaccuracy in a representation does not result in a failure of the closing condition in Section 8.1 unless the inaccuracy would constitute an MAE.

**ANSWER:** Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 50 relating to ███████████████████████████ ██████████, and on that basis denies them. To the extent paragraph 50 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 50 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

51. Importantly, ████████████████████████ does not constitute an MAE. Under the SPA, an MAE is limited to "any effect that is materially adverse" to the Business. *Id.* at Ex. A (emphasis added). This definition excludes any effects that could be or would be reasonably expected to be materially adverse to the Business in the future. Moreover, the MAE definition expressly excludes "any adverse effect resulting directly or indirectly from the announcement, execution or delivery of the Agreement or the pendency or consummation of the Transactions, including any disruption in (or loss of) supplier, service provider, partner or similar relationships or any loss of employees." *Id.* ████████████████████████████████████████████
████████████████████████████, is exactly the type of post-announcement event that is exempted from the MAE definition. ██████████████████████████████████
███████████████████████████████████████████████████████

**ANSWER:** Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 51 relating to ███████████████████████████ ██████████████████████████████████████████████ and on that basis denies them. To the

extent paragraph 51 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 51 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

52.    In any event, after Kpler threatened to delay closing over ███████████████████



**ANSWER:**  Kpler admits that it has worked ███████████████████████████████

███████████████████████████████████████████████████. Kpler further

admits ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████. Kpler denies the remaining allegations in paragraph 52.

53.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████    The SPA is clear that Kpler's consent to a settlement or compromise agreement "shall not be unreasonably withheld, conditioned or delayed." *Id.* § 6.3. ████████████████

████████    Moreover, raising potential hurdles to closing and then scuttling its resolution is precisely the type of action by Kpler that does not and cannot give rise to an MAE. To the extent the pendency of this dispute constitutes an adverse effect, it has resulted "directly or indirectly from any breach by [Kpler] of any provision of this Agreement or the taking of any other action by [Kpler]" and is therefore not an MAE. *Id.* Kpler's attempt to nonetheless use ████████████████ ████████████████ as an excuse to avoid closing is meritless.

**ANSWER:**  Kpler denies the allegations in paragraph 53.

54.    As a second purported justification for failing to close, Kpler has pointed to ████

████████████████████████████████████████████████████████



**ANSWER:** Kpler admits that, prior to Spire's commencement of the instant action, Kpler

communicated concerns to Spire regarding ███████████████████████████████

███████. The remaining allegations in paragraph 54 consist of legal conclusions, to which no

response is required; to the extent a response is deemed required, Kpler denies those allegations.

55.    Section 8.3 is clear that the only scenario in which a governmental order can create
an unmet closing condition is if such order "**shall have been issued . . . and remain[s] in effect**."
Ex. 1 (SPA) § 8.3 (emphasis added).

**ANSWER:** Kpler denies the allegations in paragraph 55.

56.    The parties received ███████████████████████████████████
on January 24, 2025—**after** closing should have and would have occurred but for Kpler's breach.
Thus, even if ███████████████████ presented an obstacle to closing, that obstacle did not even
exist as of the time when the parties should have closed.

**ANSWER:** Kpler denies the allegations in paragraph 56.

57.    Moreover, ████████████████████████████████████████
████████████████ Only a temporary restraining order, preliminary or permanent injunction, or other
order "**preventing the consummation**" of the transaction can result in an unmet closing condition.
*Id.* § 8.3 (emphasis added).

**ANSWER:** Kpler denies the allegations in paragraph 57.

58.    ████████████████████████████████████████████
████████████████████████████████ Kpler is obligated to use "best efforts" and take "any and
all actions" to eliminate regulatory impediments for the transaction (*id.* § 6.1(c); see also Ex. 2 at
Schedule 6.1(c)), yet Kpler has instead used potential regulatory hurdles as an excuse for not
consummating the closing.

**ANSWER:** To the extent paragraph 58 purports to quote from or characterize the SPA,

Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's

characterizations and refers the Court to the SPA for a true and complete account of its contents.

The remaining allegations in paragraph 58 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations.

59.     In communications between the parties following the Closing Date, Kpler has only vaguely averred that consummating the transaction ███████████████████ would be potentially inconsistent with the terms of the SPA without identifying any closing condition that would be unmet as a result of the ████████████████. For good reason, as no such condition exists. And while Kpler has suggested that Spire may be in breach of Section 8.3, that provision only applies to orders or injunctions issued prior to closing that prevent the parties from actually completing the closing.

**ANSWER:** Kpler denies the allegations in paragraph 59.

60.     Rather than work through the regulatory process and take "any and all actions" to eliminate regulatory impediments as is Kpler's burden under the SPA, Kpler has instead attempted to use the ████████████████████████████████████ as leverage against Spire. Kpler's attempt to turn the ███████████████████ into an unmet closing condition is irreconcilable with the SPA's terms.

**ANSWER:** Kpler denies the allegations in paragraph 60.

61.     Because of Kpler's breach and the uncertainty it has generated, Spire faces irreparable harm. Kpler stipulated in the SPA that "irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur in the event that the Parties do not perform their obligations under the provisions of this Agreement in accordance with its specified terms or otherwise breach such provisions." Ex. 1 (SPA) § 12.13.

**ANSWER:** Kpler denies the allegations in the first sentence of paragraph 61.  To the extent paragraph 61 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents. The remaining allegations in paragraph 61 consist of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies those allegations. Kpler specifically denies that it has breached the SPA or that Spire is entitled to any form of relief, including equitable relief.

62.     Kpler's actions to avoid consummating the deal create uncertainty and delay that harm Spire and expose the company to adverse effects on its business operations. Kpler's failure to close has caused significant confusion and disruption among Spire employees, who are more likely to be poached by Spire's competitors as a result of Kpler's delay. Kpler's delay and the

resulting uncertainty have also damaged the Business's relationship with its customers and suppliers.

**ANSWER:**  Kpler denies that it has taken actions "to avoid consummating the deal," or that the transaction has not closed because of improper actions taken by Kpler. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 62 relating to "confusion and disruption among Spire employees," any hypothetical "poach[ing]" of Spire's employees that may or may not occur, or "damage" to Spire's relationships with its customers and suppliers, and on that basis denies them. Kpler denies the remaining allegations in paragraph 62.

63.    As a result of the restatement process initiated in August 2024, Spire has triggered a default with its lender and been forced to negotiate waivers and amendments to its financing agreement. A key reason for Spire to execute the transaction was to retire its outstanding debt, which would mitigate risk by removing the most significant external financial pressures on the business. Spire remains subject to that risk for as long as Kpler continues to delay the closing. Spire is also continuing to incur expense related to the restatement process, which it needs to pay off using the proceeds from the sale of the Business.

**ANSWER:**  Kpler denies that the transaction has not closed because of improper actions taken by Kpler. Kpler admits that Spire publicly disclosed that it had initiated a restatement process in August 2024. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in paragraph 63, and on that basis denies them.

64.    The restatement process has further prevented Spire from accessing the capital markets to finance its operations. Selling the Business is one of Spire's few remaining financing strategies and key to finalizing the restatement process and transforming Spire's cost structure and operating model. Kpler's failure to consummate the transaction threatens to derail this process and significantly impair Spire's enterprise value and ability to finance its operations.

**ANSWER:**  Kpler denies that the transaction has not yet closed because of improper actions taken by Kpler. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in paragraph 64, and on that basis denies them.

65.    Kpler's continued failure to close could also subject Spire to external stock market pressure. Spire has communicated to investors that it anticipates closing the transaction in Q1

2025. Failing to consummate the transaction within that time may lead to speculation that the transaction may not close at all.

**ANSWER:** Kpler admits that, in November 2024, Spire publicly disclosed its own expectation that the transaction would be completed by the first quarter of 2025. Kpler lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in paragraph 65 relating to hypothetical scenarios that may or may not arise if the transaction is not completed in the first quarter of 2025, and on that basis denies them. Kpler denies the remaining allegations in paragraph 65.

66.    Prompt remedial action in the form of specific performance and injunctive relief is warranted.

**ANSWER:** Paragraph 66 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the allegations in paragraph 66. Kpler specifically denies that Spire is entitled to any form of relief, including specific performance or other injunctive relief.

## <u>COUNT I</u>
### <u>(Breach of Contract – Specific Performance & Injunction)</u>

67.    Spire repeats and incorporates by reference the allegations above as if fully set forth herein.

**ANSWER:** Kpler repeats and incorporates by reference its responses above as if fully set forth herein.

68.    The SPA is a valid and enforceable contract between Spire and Kpler.

**ANSWER:** Paragraph 68 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler admits the allegations in paragraph 68.

69.    Spire has fully performed all of its obligations under the SPA to date, and is ready, willing, and able to continue so performing.

**ANSWER:** Paragraph 69 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the allegations in paragraph 69.

70.     All of the conditions set forth in Sections 8 and 9 of the SPA have been satisfied or are expected to be satisfied at the closing.

**ANSWER:** Kpler denies the allegations in paragraph 70.

71.     Kpler has breached the SPA by, among other things, violating Sections 1.2, 1.4, 2.3, 6.1, and Schedule 6.1(c).

**ANSWER:** Kpler denies the allegations in paragraph 71.

72.     The SPA provides that "irreparable damage for which monetary damages, even if available, would not be an adequate remedy, would occur in the event that the Parties do not perform their obligations under the provisions of this Agreement in accordance with its specified terms or otherwise breach such provisions." Ex. 1 (SPA) § 12.13. The parties further agreed that each party "shall be entitled to an injunction or injunctions, specific performance, or other equitable relief, to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof," and "the right of specific performance is an integral part of the Transactions" and "shall include the right of Seller Parent to cause Buyer Parent to purchase the Purchased Equity and to consummate the other Transactions, on the terms and subject to the conditions set forth in this Agreement." *Id.* The parties further agreed not to "oppose the granting of an injunction, specific performance and other equitable relief on the basis that the other Parties have an adequate remedy at law or an award of specific performance is not an appropriate remedy for any reason at law or equity." *Id.*

**ANSWER:** To the extent paragraph 72 purports to quote from or characterize the SPA, Kpler admits that the Complaint quotes certain portions of the SPA but denies Spire's characterizations and refers the Court to the SPA for a true and complete account of its contents.

73.     Spire has suffered and will continue to suffer irreparable harm as a result of Kpler's breaches.

**ANSWER:** Kpler denies the allegations in paragraph 73.

74.     Spire has no adequate remedy at law.

**ANSWER:** Kpler denies the allegations in paragraph 74.

## COUNT II
### (Declaratory Judgment)

75.    Spire repeats and incorporates by reference the allegations above as if fully set forth herein.

**ANSWER:**  Kpler repeats and incorporates by reference its responses above as if fully set forth herein.

76.    This Court has authority to issue a declaratory judgment under 10 *Del. C.* § 6501.

**ANSWER:**  Paragraph 76 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the allegations in paragraph 76.

77.    A valid and justiciable controversy exists between Spire and Kpler because Kpler has failed to perform its obligations under the SPA, including its obligations to close the transaction.

**ANSWER:**  Paragraph 77 consists of legal conclusions, to which no response is required; to the extent a response is deemed required, Kpler denies the allegations in paragraph 77.

78.    Spire seeks a declaration that,

    a.    Section 1.2 required Kpler to acquire the Business from Spire at and as of the closing date;

    b.    Section 1.4 required Kpler to close on its purchase of the Business from Spire on the closing date of January 24, 2025;

    c.    Section 2.3 required Kpler to make certain payments to Spire as part of Kpler's acquisition of the Business on the closing date; and

    d.    Section 6.1 and Schedule 6.1(c) required Kpler to use "best efforts" and to take "any and all actions necessary" to eliminate any regulatory impediments to closing.

**ANSWER:**  Kpler admits that Spire seeks a declaration from this Court. Kpler specifically denies that Spire is entitled to any form of relief, including declaratory relief.

79.    Spire also seeks a declaration from this Court that

    a.    all conditions to closing under the SPA have been satisfied;

    b.    Kpler has not acquired the Business, as required under the SPA, including Sections 1.2, 1.4, or 2.3;

    c.    Kpler has not exercised "best efforts" to remove all regulatory impediments to closing, as required under Section 6.1 and Schedule 6.1(c); and

> d.    Kpler is not excused from performing the obligations imposed by the SPA, including Sections 1.2, 1.4, 2.3, 6.1, and Schedule 6.1(c).

**ANSWER:**  Kpler admits that Spire seeks a declaration from this Court. Kpler specifically denies that Spire is entitled to any form of relief, including declaratory relief.

## PRAYER FOR RELIEF

**ANSWER:**  Kpler denies all allegations in Spire's prayer for relief and specifically denies that Spire is entitled to any relief.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof as to any defense or issue that would otherwise rest on Spire or as to any element of Spire's claims, and reserving the right to amend this Answer to assert any additional defenses when, and if, in the course of its investigation, discovery, preparation for trial, or otherwise it becomes appropriate to assert such defenses, Kpler asserts the following defenses.

## FIRST DEFENSE

Spire's claims are barred, in whole or in part, because Kpler has complied in all material respects with its obligations under the SPA, including but not limited to its obligations under §§ 1.2, 1.4, 2.3, 6.1, and Schedule 6.1(c), by taking steps necessary to proceed toward closing by the End Date specified in the SPA.

## SECOND DEFENSE

Spire's claims are barred, in whole or in part, by the failure of conditions precedent in the SPA, including without limitation, §§ 8.1 (concerning the veracity of Spire's representations and warranties as of the date of closing), 8.3 (concerning the absence of any restraints on closing), and 8.4 (concerning the absence of any MAE arising between execution of the SPA and closing).

**THIRD DEFENSE**

Spire's claims are barred, in whole or in part, by a lack of causation because Kpler is not the reason the transaction has not yet been completed. In addition, ████████████████████ ████████████████████████████████████████████████████ ███████████████████████, has resulted in the failure of closing conditions under the SPA.

**FOURTH DEFENSE**

Spire's claims are barred, in whole or in part, by its failure to comply with the SPA.

**FIFTH DEFENSE**

Spire's claims are barred, in whole or in part, by the doctrine of frustration of purpose because proceeding towards closing the transaction at this time would be ████████████ ████████████████████ that could substantially frustrate the principal purpose of the SPA (the integration of Spire's maritime business into Kpler's business operations).

**SIXTH DEFENSE**

Spire's claims are barred, in whole or in part, by the doctrine of impracticability in light of ████████████████████████████████████████████████████ ████████████.

**SEVENTH DEFENSE**

Spire's claims are barred, in whole or in part, because they are contradicted by documentary evidence, including but not limited to the parties' correspondence with each other and ███████ ████████████████████.

**EIGHTH DEFENSE**

Spire's claims are barred, in whole or in part, by the doctrine of waiver, or, in the alternative, acquiescence, because even if the closing conditions had been met as of January 24, 2025, which they were not, Spire continued to discuss a potential closing date after January 24,

2025; estoppel, because Spire previously communicated and Kpler relied on a mutual understanding that ██████████████████████████████████ would affect the closing timeline; and unclean hands, because Spire's own failure to ensure the accuracy of its representations and warranties ████████████████████████████████ ████████████████████████████, prevents Spire from demanding specific performance of the SPA or obtaining other equitable relief.

**NINTH DEFENSE**

Spire's requested relief is against public policy, against principles of comity, illegal, and unenforceable to the extent that Spire seeks an order compelling Kpler to consummate the closing irrespective of any conflicting order, directive, or instruction from another court, tribunal, or regulatory authority prohibiting or otherwise restricting the closing.

**TENTH DEFENSE**

Any harm alleged by Spire is the result of its own actions. Without limiting the foregoing, Spire chose to commence this litigation and to announce to the market prematurely that the transaction may not close in the First Quarter of 2025, despite Kpler's continuing efforts to close the transaction in accordance with its terms as expeditiously as possible.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Kpler respectfully requests that this Court enter an order and judgment:

a) Dismissing the Complaint on the merits, in its entirety and with prejudice;

b) Awarding Kpler reasonable costs and expenses incurred in this action, including without limitation attorneys' fees and related costs; and

c) Providing such other and further relief as the Court may deem just and proper.


OF COUNSEL:

**WACHTELL, LIPTON, ROSEN & KATZ**
Graham W. Meli (*pro hac vice*)
Kevin S. Schwartz (*pro hac vice*)
Adebola O. M. Olofin (*pro hac vice*)
Joseph S. Tobin (*pro hac vice*)
Todd S. Gilman (*pro hac vice*)
51 West 52 Street
New York, NY  10019
(212) 403-1000
gwmeli@wlrk.com
kschwartz@wlrk.com
aomolofin@wlrk.com
jstobin@wlrk.com
tsgilman@wlrk.com

**COOLEY LLP**
Sarah Lightdale (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Kaitland Kennelly (*pro hac vice*)
55 Hudson Yards
New York, New York  10001
(212) 479-6000
slightdale@cooley.com
pbowman@cooley.com
kkennelly@cooley.com

Dated: March 10, 2025

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/ Rudolf Koch*
Rudolf Koch (#4947)
Jason J. Rawnsley (#5379)
Matthew D. Perri (#6066)
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
koch@rlf.com
rawnsley@rlf.com
perri@rlf.com

*Attorneys for Defendant Kpler Holding SA*

## <u>CERTIFICATE OF SERVICE</u>

PLEASE TAKE NOTICE that on March 10, 2025, a true and correct copy of the foregoing

was caused to be served on the following counsel via electronic mail:


Jonathan K. Youngwood
Meredith Karp
Jacob Lundqvist
Nora C. Hood
SIMPSON THACHER &
BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
meredith.karp@stblaw.com
jacob.lundqvist@stblaw.com
nora.hood@stblaw.com

Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
FAEGRE DRINKER
BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com


*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)